269 So.2d 407 (1972)
NATIONAL CAR RENTAL SYSTEM, INC., Appellant,
v.
Johnny David HOLLAND, Appellee.
No. 71-370.
District Court of Appeal of Florida, Fourth District.
November 30, 1972.
Rehearing Denied December 15, 1972.
*409 Joseph J. Reiter, of Howell, Kirby, Montgomery, D'Aiuto, Dean & Hallowes, West Palm Beach, for appellant.
Joel T. Daves, of Burdick & Daves, and Richard T. Stierer, West Palm Beach, for appellee.
OWEN, Judge.
The defendant in a personal injury action arising out of a collision between two motor vehicles suffered an adverse jury verdict and appeals from the judgment entered thereon. All of the points asserted on appeal arise out of alleged trial errors.
The collision occurred during the daylight hours at an unobstructed intersection *410 of two state highways in Broward County. Plaintiff-appellee was driving a tractor-trailer unit north on State Road 25, approaching the intersection of State Road 84. Defendant's passenger automobile, rented to and operated by a Mr. Smith of Toronto, Canada, was approaching this same intersection east bound on State Road 84. The traffic control devices at the intersection included an overhead blinker light (yellow for north and south traffic on State Road 25, and red for east and west traffic on State Road 84), various cautionary signs posted on both highways warning of the dangerous nature of the intersection, and immediately west of the intersection an oversized octagonal red "stop" sign governing east bound traffic on State Road 84. Both vehicles approached the intersection at approximately the same speed, variously estimated at between 30 and 40 miles per hour, and neither stopped nor appreciably slowed until the northbound tractor-trailer unit struck the eastbound passenger vehicle in the middle of the right side. Mr. Smith and his wife were killed and Mr. Holland sustained serious and permanent injuries as a result of the collision.
The complaint alleged simple negligence on the part of defendant's driver and the answer asserted the affirmative defense of contributory negligence. Appellant's first point is that it was error for the court to instruct the jury, at plaintiff's request and over defendant's objection, as follows:
"The defendant has raised the defense of contributory negligence. You are instructed that even if you find the plaintiff was guilty of contributory negligence, it will not bar recovery by him, if you also find from the evidence that the driver of the defendant's motor vehicle was guilty of willful negligence.
"Willful negligence is conduct which shows a reckless indifference to the rights of others, equivalent to an intentional violation of them."
The foregoing was plaintiff's requested Instruction No. 7. Defendant objected on the grounds that the evidence was legally insufficient to permit the jury to find willful and wanton misconduct on the part of the operator of defendant's vehicle. When defendant filed its assignments of error it assigned error to the giving of this instruction in the following language:
"The court erred in giving Plaintiff's requested Instruction No. 7, dealing with the issue of willful and wanton negligence as to the Defendant's driver, in that the issue of willful and wanton conduct was not raised in Plaintiff's pleadings, Pretrial Statement or in the issues of the trial."
On this appeal defendant argues both grounds, i.e., that the instruction was outside of the issues, and that the evidence was legally insufficient to justify the court giving the instruction. Appellee contends that we should not consider either ground, the first because it was not the basis of the objection made in the trial court, and the second because it was not made a ground in the assignment of error. As to the latter, appellee's contention is erroneous and we digress briefly for a comment which may aid counsel engaged in appellate practice.
The function of assignments of error is to identify the specific judicial act of which complaint is made. Except for so-called "fundamental error", appeals are determined on the basis of identified judicial error which has been made the subject of a proper assignment of error under Rule 3.5, F.A.R., 32 F.S.A., and which is argued in the brief. Rule 3.5, F.A.R. requires only that the assignment designate an identified judicial act; the Rule expressly provides that grounds for error need not be stated. In this case appellant clearly identified the judicial act, to-wit: the giving of plaintiff's requested Instruction No. 7. That portion of the assignment of error which sought to set forth the grounds for error was surplusage *411 and does not have the effect of restricting appellant's argument in support of the assignment to that particular ground.
Turning to the merits of the question of whether the evidence was legally sufficient to justify the instruction, we conclude that it was not, and that the court erred in giving this instruction. While it is certainly correct that under certain circumstances a plaintiff's own contributory negligence will not bar his recovery from a defendant who is guilty of willful and wanton misconduct, Johnson v. Rinesmith, Fla.App. 1970, 238 So.2d 659, the type of willful and wanton misconduct necessary to activate this principle of law is the same type of willful and wanton misconduct required to sustain a recovery for punitive damages or to sustain a conviction for manslaughter by culpable negligence if a death had occurred as a result thereof. Carraway v. Revell, Fla. 1959, 116 So.2d 16; Johnson v. Rinesmith, supra. The evidence touching on the conduct of the operator of defendant's vehicle, which we have outlined above, would not have sustained an award of punitive damages or a conviction for manslaughter,[1] and hence is insufficient to justify the instruction in question.
Did this error result in a miscarriage of justice? From our examination of the entire case, we think not. It seems highly unlikely, if not in fact inconceivable, that the jury would have concluded that defendant's driver, a 70-year old visitor from Canada, acted with reckless indifference to the consequences of his conduct based on nothing more than his failure to slow or stop his vehicle before entering the intersection. Furthermore, any inference of contributory negligence on the part of the plaintiff is extremely tenuous in view of the uncontradicted evidence that he was operating his vehicle on the open highway within the speed limit, with the right-of-way at the controlled intersection, and could not have known that such right-of-way would not be yielded to him until at a point where the collision was inevitable.
Appellant next contends that the court erred in instructing the jury that it could take into consideration any future medical expense which Holland was reasonably certain to incur, because (so says appellant) there was no evidence (1) that Holland would require future medical care or treatment, nor (2) as to the amount which any such future medical care would cost. As to the first, one of Mr. Holland's treating physicians testified that in his opinion Mr. Holland would continue to require medical attention for the injuries sustained in the accident for the remainder of his life. This was sufficient to warrant the jury giving consideration to this very important giving of plaintiff's alleged damages. LaRussa v. Vetro, Fla. 1971, 254 So.2d 537. As to the second, it is true that no medical witness gave any estimate as to the precise amount of money that would be involved in future medical care for the plaintiff, but the jury did have before it the medical bills which had been theretofore incurred, and from those the jury could get at least some indication of the expense of medical care. The instruction which the court gave on this issue was Standard Jury Instruction 6.1(b) and 6.2(c), 31 F.S.A. (read in conjunction), which clearly contained the admonition that the jury would consider only such damages as plaintiff was reasonably certain to incur in the future. Simply because the plaintiff did not adduce more definitive evidence as to the frequency with which plaintiff would need medical care and attention, nor the nature, extent and cost thereof, did not make it error for the court to instruct on this element of damages when there was evidence *412 to show that the plaintiff would require medical care the remainder of his life. We should not indulge in the assumption that the jury may have speculated as to the nature and amount of such future medical care. Rather, in the absence of a clear showing to the contrary, we should presume that the jury followed the court's instruction and included in its verdict only such amount as the jury found from the greater weight of the evidence was reasonably certain to be incurred in the future.
Appellant contends that the court erred in allowing plaintiff's witness, a Mrs. White, to express her opinion that there was nothing plaintiff could have done to avoid the accident. Since one of the issues before the jury was plaintiff's alleged contributory negligence, and since the witness had not been qualified as an expert (although she stated that she had been driving for 28 years) appellant's point has validity as a bare legal principle. See Howland v. Cates, Fla. 1950, 43 So.2d 848; Scott v. Barfield, Fla.App. 1967, 202 So.2d 591; 13 Fla.Jur., Evidence, Section 305.
The problem is that in this case the witness made the statement in response to cross-examination by appellant's counsel as follows:
"Q. Were you in a state of mind where you were expecting the accident to take place?
"A. You always are out there.
"Q. I mean, in this instance on the day this accident occurred, didn't you specifically look at that Rambler knowing that the truck was going to hit it?
"A. I knew he would hit him after he ran out in the middle of the road. There was no way to avoid it then."
There was no motion to strike this gratuitous statement of opinion by the witness. Therefore, it was in evidence without objection. Subsequently, on re-direct examination by plaintiff's counsel, the following occurred:
"Q. You answered Mr. Reiter's questions as you described the blue car coming into the intersection through the stop sign saying there was no way to avoid it. Would you explain what you mean, no way for whom or what to avoid what?
"MR. REITER: Objection, you're calling for a conclusion on the part of the witness and usurping the function of the jury.
"THE COURT: Overruled.
* * * * * *
"Q. Your reference to no way to avoid was based upon your observation of the vehicles. Which could not avoid it to your observation?
"A. The truck. There was no place for it to go."
Appellant's objection was too late, coming as it did during re-direct examination directed toward clarification of an opinion previously expressed on cross-examination. At that point it was within the court's sound judicial discretion to permit or not the re-direct question seeking clarification. No abuse of discretion is shown.
Appellant's final point is academically sound and demonstrates error, but just as in the case of the first point discussed above, we conclude from our examination of the record that such error was harmless. Nonetheless, for instructive purposes we discuss it briefly.
The court allowed the plaintiff to introduce into evidence over defendant's objection a document entitled "Doctor's Certificate" signed by a Dr. Gist, who did not testify. The only predicate laid for the admission of this document into evidence was the testimony of plaintiff's employer, who identified the document categorically as being part of his business records. The certificate was quite brief and stated in *413 substance that [on a date approximately 18 months prior to the accident] Dr. Gist had examined plaintiff in accordance with the I.C.C. rules and had found the plaintiff qualified under said rules to drive a motor vehicle in interstate commerce. The only issue as to which the document was relevant was the plaintiff's state of health. Thus, it is clear that the document was offered as tending to prove the truth of the matter therein asserted, to-wit: that plaintiff was physically qualified on the date of the examination to operate a motor vehicle in interstate commerce. When offered for this purpose the document was hearsay, the basis of defendant's objection.
The hearsay rule is, of course, subject to the so-called "business records" exception. This subject is discussed at length by Professor Wigmore in his treatise on evidence[2] and the exception is now a part of our civil practice and procedure by virtue of the Uniform Business Records as Evidence Act, F.S., Section 92.36, F.S.A. For a complete and scholarly discussion of the Uniform Act see the opinion by Judge Milton B. Conford in the case of Fagan v. City of Newark, 1963, 78 N.J. Super. 294, 188 A.2d 427. The question here is whether the document was within the business records exception, (and thus competent evidence to prove the truth of its content) by virtue of the fact that it was a part of the business records of plaintiff's employer. We think not. Otherwise, every letter which plaintiff's employer received in connection with the operation of his business and which was subsequently retained as part of his business records ipso facto would be fully competent to prove the truth of its contents. Little reflection is needed to conclude that such a result would be totally intolerable and is neither the intent nor within the scope and purpose of the statute. The probability of trustworthiness, which is the basic justification for permitting business records into evidence as an exception to the hearsay rule, can be satisfactorily assured only if the trial court requires as a predicate that (1) the custodian or other qualified witness testify to its identity and the mode of its preparation, and (2) it is further shown that the entry was made in the regular course of business at or near the time of the act, condition or event of which it purports to be a record, and finally, (3) the court is satisfied that the sources of information, method and time of preparation were such as to justify its admission. No predicate or inquiry was made here beyond the witness stating that the certificate was part of his business records which he kept in the regular course of his business. Without our discussing or deciding under what conditions, if any, this certificate might have been admissible as part of the business records of plaintiff's employer, or under what circumstances, if any, a proper predicate might have been laid for the admission of the certificate as part of the business records of Dr. Gist, it is certainly apparent that the certificate was not properly admitted in this case. We have discussed the point because we have noted from time to time a tendency to view anything labelled "business records" as being thereby admissible under the statute without more. The error here was unquestionably harmless in view of the substantial uncontradicted evidence which otherwise appears in the record establishing that plaintiff was physically qualified to and did in fact drive his truck for several years immediately preceding the accident.
The judgment is affirmed.
REED, C.J., and MAGER, J., concur.
NOTES
[1] The facts here closely parallel those in Porter v. State, Fla. 1956, 88 So.2d 924, in which the Supreme Court reversed a manslaughter conviction. While we recognize that the Porter case involved the quantum of proof necessary to sustain a conviction of a criminal charge, nonetheless we consider the case to be authoritative as to conduct which is legally insufficient to be termed "willful and wanton".
[2] 5 J. Wigmore, Evidence, Sections 1517-1533 (3d ed. 1940).