388 So.2d 244 (1980)
Leigh O. McEACHERN, III, Appellant,
v.
STATE of Florida, Appellee.
No. 78-2074/T4-218.
District Court of Appeal of Florida, Fifth District.
August 20, 1980.
Rehearing Denied September 29, 1980.
*245 Richard L. Wilson, Orlando, for appellant.
Jim Smith, Atty. Gen., Tallahassee, C. Michael Barnette, Asst. Atty. Gen., Daytona Beach, for appellee.
ORFINGER, Judge.
This is a timely appeal from the judgment and sentence of the Circuit Court, Orange County, adjudging appellant guilty of two counts of grand larceny after jury trial, and imposing sentence of fifteen years for each count, to run consecutively. We affirm the conviction, but set aside the sentences and remand this cause for resentencing.
Appellant was Chief Deputy Sheriff of Orange County, Florida, during the fiscal years beginning October 1, 1975 to September 30, 1976, and October 1, 1976 to September 30, 1977. Appellant was responsible, inter alia, for the administration of an "investigative fund". Most of the investigative fund expenditures can be attributed to the "Special Investigations Division" of the Sheriff's Office, which carries out most under-cover assignments such as narcotics and vice. Money from the fund is used to pay informants, to purchase drugs, to demonstrate an agent's ability to pay for drugs in proposed purchases, and for other similar under-cover purposes. Internal records were kept of the expenditures, but because of the necessity to keep the investigations secret, the funds are not audited. Checks drawn on the account are initially issued only upon written requisition from either the Sheriff, the Sheriff's designate, or Appellant McEachern.
The record shows that in fiscal year 1975-76, a sum in excess of $263,000 was drawn on the account. Of this sum, more than $236,000 was issued directly to appellant upon his requisition. Slightly more than $143,000 was redeposited to the account, so approximately $120,000 was consumed. During fiscal year 1976-77, more than $187,000 was paid out, $140,000 of it directly to appellant. After crediting redeposits, slightly more than $105,000 was consumed. Evidence was presented at trial in the form of records of the Special Investigations Division showing its use of the investigative funds, and records were also produced of the Criminal Investigation Division which also made some use of these funds, although in very small amounts. The unaccounted for portion of the funds drawn in these two fiscal years far exceeded the amounts which could be accounted for.
Evidence was presented establishing appellant's salary during his employment with the Sheriff's Department. Evidence was also presented of the combined income of appellant and his wife during the two fiscal years in question, and also the recorded expenditures made by appellant and his wife during those periods. There was evidence presented that appellant paid large amounts of money in cash at various times. In short, the evidence tended to show expenditures both by cash and by check of sums far greater than the known income of appellant and his wife.
Explanations by appellant as to the sources of his income other than his salary, and explanations given by his wife were disputed and contradicted by other testimony. Appellant's wife testified that she had received approximately $75,000 in cash from her former husband, but the former husband denied giving her any money. The jury obviously did not believe appellant's explanation, and it had a right to reject it.
Appellant raises five points on appeal, but only two require discussion. He first contends that the court erred in allowing certain records to be considered as evidence, referring specifically to various books and records of the Sheriff's Department offered in evidence by the State and admitted into evidence over objection. We find no error in the admission of the records *246 under the Uniform Business as Evidence Act, section 92.36(2), Florida Statutes (1975). In each case, there was testimony of the custodian or other qualified supervisor of the records testifying as to the identity and mode of preparation and that it was made in the regular course of business at or near the time of the act, condition or event.
The Uniform Business Records as Evidence Act is an extension of the shopbook rule and is intended to liberalize the rules pertaining to the admissibility of shopbook memoranda. Exchange National Bank of Tampa v. Hospital and Welfare Board of Hillsborough County, Fla. App.2d, 1965, 181 So.2d 9. The justification for this exception to the hearsay rule is the probability of trustworthiness which is incident to a record kept in the regular course of business and made at or near the time of the act, condition or event of which it purports to be a record. National Car Rental System, Inc. v. Holland, Fla.App. 4th, 1972, 269 So.2d 407. There is nothing in the statute which suggests that its application is limited to civil cases. Holley v. State, 328 So.2d 224, at 225.
The argument by appellant that the persons making the entries could not be identified does not require a contrary ruling. The statute was passed to avoid the necessity of bringing to court every person who played a part in the preparation of a particular business record. Holley v. State, supra. Appellant relies on Mastan Company, Inc. v. American Custom Homes, Inc., 214 So.2d 103 (Fla. 2d DCA 1968), as support for his position that these records should have been excluded. In that case, the trial court excluded the evidence after determining that the proffered records did not comply with the statute. The appellate court concluded that the trial court was correct in ruling that the business records were not properly authenticated for introduction. The court noted, however, that the records could have been properly authenticated by the supervisor of the records, who was not offered as a witness. It noted that the trial court has broad discretion in determining if the evidence adduced lays the proper foundation for reception of business records under the statute. Here, the trial court determined that there was a proper predicate and foundation, and we cannot say that he abused his discretion.
Appellant next contends that the indictment failed to charge him with a crime under the laws of the state. We do not agree. The indictment was sufficient to charge him with larceny under section 812.021(1)(a) and to designate the crime as grand larceny under section 812.021(2)(b), Florida Statutes (1975). The indictment alleges that appellant
did, while deputy sheriff of Orange County, Florida, between the 1st day of October, 1975, and the 30th day of September, 1976, in Orange County, Florida, in violation of Florida Statute 812.021, take, steal, and carry away from the lawful possession of the custodian and owner thereof, Melvin G. Colman, Sheriff of Orange County, Florida, within a twelve-month period preceding the 1st day of October, 1976, as part of a common scheme or design to defraud, certain property, to-wit: money, of the aggregate value of $200.00 or more, lawful money of the United States of America, with the intent to permanently deprive the said Melvin G. Colman, Sheriff of Orange County, Florida, of the said property or the use and benefit thereof while the said LEIGH O. McEACHERN, III, was an agent, servant, or employee of the said Melvin G. Colman, Sheriff of Orange County, Florida.
Count II was in identical language, except that it referred to the next succeeding fiscal year.
But appellant then contends that if the indictment does charge a crime, it only charges him with grand larceny as a third degree felony, and does not charge him with those elements of the statute which raise the crime to a second degree felony. In pertinent part, section 812.021(2) says:
(2) If the property stolen is:
* * * * * *

*247 (b) Of the aggregate value of $200 or more, taken in any 12-consecutive month period, by an agent, servant, or employee from his principal or employer by a series or combination of any of the acts denounced in this section, as part of a common scheme or design to defraud;
* * * * * *
the offender shall be deemed guilty of grand larceny, which constitutes a felony of the third degree, ... unless the offender is a public servant who used his official position to commit the offense or, in the course of committing the offense, stole public property or property which the duty of his office required him to receive and hold, in which case the offender shall be guilty of a felony of the second degree ..."
As can be seen from the complete recitation of the indictment, nowhere does it charge that appellant either was a public servant who used his official position to commit the offense, or that appellant stole public property, or that he stole property which the duty of his office required him to receive and hold. In order to convict appellant of the second degree felony, he must be charged with those elements of the crime that comprise the felony. Without those allegations, he is charged only with grand larceny, a third degree felony and can only be sentenced for that crime when found guilty.
"In an indictment or information for an offense divided into degrees it is sufficient to charge that the defendant committed the offense without specifying the degree... . When an accusatory instrument charges an offense that embraces a lesser offense or one of a lower degree of the same general class it may support a conviction of the lesser offense only, though the proof shows the defendant to be guilty of the greater offense. This may occur where he is indicted for only the lesser offense and the proof shows commission of a greater crime inclusive of the lesser one charged." 15 Fla.Jur.2d, Criminal Law § 687, pp. 288-289. (emphasis added).
At the sentencing hearing, when appellant's counsel objected to the sentence under the higher crime portion of the statute, the State obviously recognized the need to properly charge appellant when, in responding to the objection, the prosecutor said that the indictment contained allegations that "Mr. McEachern was a public servant and the fact that the money he had was entrusted to him and the fact that the money that was entrusted to him was in the custody and control of the Sheriff of Orange County." However, it is obvious from the indictment which we have earlier set out in full, that no such language appears. If the State had intended to charge appellant with the higher degree of the crime, it would have been a simple matter to allege one of the three required elements.
"An information must allege each of the essential elements of a crime to be valid... . No essential element should be left to inference." State v. Dye, 346 So.2d 538 (Fla. 1977).
Since he was not so charged, we can only assume that the State did not intend to charge him with the higher degree of the crime, although we fail to understand why it was not done. The jury found appellant guilty as charged in the indictment, so he could only be sentenced for the crime for which he was charged and found guilty.
Following the same principle, this court has recently held that a defendant indicted for robbery could not be sentenced for armed robbery, although the proof indicated that he was armed. Michael Alan Sanders v. State, No. 80-519 (Fla. 5th DCA July 30, 1980). A similar result was reached in Chapola v. State, 347 So.2d 762 (Fla. 1st DCA 1977), where a defendant was charged with robbery, there being no allegation in the information that a weapon was used. The court said:
The Court erred in sentencing Chapola to life imprisonment because he was merely charged with robbery; the jury found him guilty as charged; and the Court adjudicated him guilty of this charge. Under Section 812.13(2)(c), which is applicable to this case, the Court could sentence *248 Chapola to no more than 15 years imprisonment.
The State argues that Chapola knew prior to trial that the State would adduce evidence at trial that he was carrying a knife at the commission of the robbery but he did not attack the sufficiency of the information. This argument is without merit. It is the State's obligation to frame the allegations of its information, not the defendant.
Chapola went to trial on the allegations in the information and the Court properly charged the jury on the allegations and proof thereof at trial. 347 So.2d at 763-64.
See also, Scott v. State, 379 So.2d 1021 (Fla. 2d DCA 1980).
We understand and appreciate the trial judge's concern expressed in his sentencing judgment that the citizens of this State will not and should not tolerate stealing of public money by officers and employees who are placed in positions of trust and responsibility. Had the State charged appellant properly, the trial judge would have had jurisdiction to sentence appellant for conviction of a second degree felony, but in this case he could not do so.
Since we must remand this case for resentencing, one additional observation is warranted. In pronouncing the sentence, the trial court alluded to the cost of investigation and trial and the difficulty involved in proving the State's case. While it is not clear that the court placed great emphasis on this factor in determining the length of sentence, it is clear that this cannot be considered in imposing a sentence for one convicted of a crime. The law is clear that any judicially imposed penalty which needlessly discourages assertion of the Fifth Amendment right not to plead guilty and deters the exercise of the Sixth Amendment right to demand a jury trial is patently unconstitutional. Gillman v. State, 373 So.2d 935 (Fla. 2d DCA 1979). We suggest the court omit any consideration of the cost or expense or difficulty of a jury trial in resentencing the appellant.
We have considered appellant's other points on appeal and find no merit in them.
Accordingly, the judgment of conviction is affirmed. The sentence is set aside and the cause is remanded to the trial court for resentencing on two counts of grand larceny, each a third degree felony. Defendant shall be present for resentencing.
AFFIRMED in part, REVERSED in part and REMANDED.
DAUKSCH, C.J., and COBB, J., concur.