467 So.2d 447 (1985)
Ronald FRAZIER a/k/a Ronnie Fraley, Appellant,
v.
The STATE of Florida, Appellee.
No. 83-1212.
District Court of Appeal of Florida, Third District.
April 16, 1985.
Bennett H. Brummer, Public Defender and McMaster, Forman & Miller and Daniel H. Forman, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Jack B. Ludin, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and BARKDULL and HUBBART, JJ.
SCHWARTZ, Chief Judge.
In Fraley v. State, 426 So.2d 983 (Fla. 3d DCA 1983), we held that this appellant's[1] twenty five year sentence  twenty years for robbery and a consecutive five years for probation violation  imposed after the trial court had tendered, and Frazier had declined, a six year plea offer before the jury retired, was "presumptively unlawful," *448 426 So.2d at 986, under North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Accordingly, the case was remanded "with instructions to resentence the defendant in accordance with the plea offer or to make record findings supportive of the more severe sentence," 426 So.2d at 986, "so as to assure the absence of vindictiveness," 426 So.2d at 985, condemned by Pearce. Pursuant to our mandate, the trial judge[2] promptly vacated the sentences, and simultaneously stated the circumstances and underlying reasons for his having made the offer and for the eventual sentences. Subsequently, after the court received a pre-sentence investigation, the defendant was resentenced to concurrent, rather than consecutive as before, sentences of twenty and five years. Frazier again appeals but, on the ground that the presumption of unconstitutional vindictiveness has been dissipated, we affirm.
The trial judge related that he had retendered the previously made six year plea offer at the end of the trial at the request of appointed defense counsel who himself made the
recommendation that he did accept it because under the circumstances, if he were convicted, there were possibilities of harsher sentences.
More important, the trial judge stated with characteristic forthrightness and clarity that he made the offer, which he said was repeated even after the jury had retired, and which avowedly represented less than a fair sentence to Frazier for the crime charged, solely in order to avoid the likely possibility that the defendant, whom the judge thought guilty, would be acquitted by the jury:
The reason I made the offer of five and one was because I had suppressed the majority of the evidence and I was fearful, and I think this is my real reasoning I had offered it: Because I thought the jury was going to walk Mr. Fraley on the case and I said, `In order to protect the people and the defendant and be fair, I will make the offer of six years of which the victim had no objection to, so I did it, and that's why I did it, because I wanted him to plead five years and one which would be six years.'
* * * * * *
The reason for the plea offer was because I thought the defendant was going to walk and I was concerned because of the information I had before me that I felt he was guilty and I was trying to protect the people's interest and the defendant's interest by making a fair plea offer which all sides agreed it was fair.
After Frazier rejected the plea, thus opting to take his chances with the jury, and then lost the bet which is inherent in that course of action, the actual sentence simply represented the court's assessment of an appropriate penalty for the crime and defendant involved, fully commensurate with its prior sentences in similar cases.
After the jury came back, the jury had concluded what I felt all along: That he was guilty beyond and to the exclusion of every reasonable doubt and six jurors of the community had agreed with what I felt was the interpretation of the evidence.
* * * * * *
Now, as far as this twenty year sentence is concerned, that was the same sentence I imposed in every robbery conviction I had of a similar nature.
Compare Gardner versus State where I imposed the same sentence.
There was no vindictive nature about it.
If I was going to be vindictive, I never would have offered it to him again after the jury went out.
I don't know any other Judge that would have done that as a favor to the defendant and the defense lawyers even *449 though I had spent three days of judicial labor trying a case.[3]
It affirmatively appears, therefore, that the twenty year sentence was not imposed out of a sense of imputed judicial "vindictiveness"[4] against the defendant for inconveniencing the court by asserting his constitutional right to a jury determination of his guilt. But that is the evil the Pearce doctrine seeks to obviate. See Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); Chaffin v. Stynchcombe, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973); Colten v. Commonwealth of Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). In fact, as the trial judge pointed out, no further inconvenience could have occurred, since the trial was entirely over when the last plea offer was made and rejected. Rather, the sentence was imposed as a rightful and reasonable one  and there is no contention to the contrary  for the crime of which the jury had found Frazier guilty. The fact that the court was given the opportunity to do so only because the plea offer had become vitiated by virtue solely of the defendant's own decision to turn it down makes no constitutional difference.
We think that this point has been made clear by the decisions of the Supreme Court of the United States interpreting Pearce, the reach of which is essentially the only issue in this case. The Pearce rule evolved because the imposition of a harsher sentence upon a defendant after a new trial ordered on appeal poses a realistic likelihood of vindictiveness. Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). See also Thigpen v. Roberts, ___ U.S. ___, 104 S.Ct. 2916, 82 L.Ed.2d 23 (1984). In both Pearce, where the defendant was subjected to a more severe sentence after an appeal and retrial, and Perry, where the defendant, a convicted misdemeanant, was reindicted by the prosecutor on felony charges after he had invoked an appellate remedy, the presumption of vindictiveness was justified because of the "institutional bias inherent in the judicial system against retrial of issues that have already been decided," United States v. Goodwin, 457 U.S. 368, 376, 102 S.Ct. 2485, 2490, 73 L.Ed.2d 74 (1982), which make it likely that "the state might be retaliating against the accused for lawfully attacking his conviction." Bordenkircher v. Hayes, 434 U.S. at 363, 98 S.Ct. at 668. In Bordenkircher, however, the court distinguished Pearce, characterizing the imposition of that penalty as unilateral, in contrast to the "give-and-take" of a plea bargaining situation like this where there is no such element of punishment or retaliation so long as the accused is free to accept or reject the offer. See United States v. Mays, 738 F.2d 1188 (11th Cir.1984); Commonwealth v. Damiano, 14 Mass. App. 615, 441 N.E.2d 1046, 1052 n. 14 (1982). Bordenkircher concerned a prosecutor's[5] decision *450 to reindict a defendant as a habitual offender after he refused to plead guilty to misdemeanor charges. The court held that the increased sentence was a legitimate use of leverage in the plea bargaining process. It stated:
[w]hile confronting a defendant with the risk of more severe punishment clearly may have a `discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'  and permissible  `attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' Chaffin v. Stynchcombe, 412 U.S. 17 at 31, 93 S.Ct. [1977] at 1985.
434 U.S. at 364, 98 S.Ct. at 668.
Many previous cases have likewise indicated or held that Pearce principles are inapplicable to the consequences of plea bargaining even when, like this case, the court participates, and even when, unlike this case, the potentiality for impermissible retribution is much greater because the offer occurs prior to the trial proceedings made necessary by the defendant's rejection. See Frank v. Blackburn, 646 F.2d 873 (5th Cir.1980), cert. denied, 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 123 (1981); People v. Szeto, 29 Cal.3d 20, 171 Cal. Rptr. 652, 623 P.2d 213 (1981); People v. Davis, 93 Ill. App.3d 187, 48 Ill.Dec. 657, 416 N.E.2d 1179 (1981); People v. Beacham, 87 Ill. App.3d 457, 43 Ill.Dec. 87, 410 N.E.2d 87 (1980); People v. Dennis, 28 Ill. App.3d 74, 328 N.E.2d 135 (1975); State v. Boone, 33 N.C. App. 378, 235 S.E.2d 74 (1977), aff'd, 293 N.C. 702, 239 S.E.2d 459 (1977).
In sum, the defendant cannot be heard to complain if the fact that his sentence is greater than the plea offer is the result, not of the assertion of his rights, but of his rejection of the proposed agreement and of the fair conclusion as to his punishment which the court has the consequent ability to render. See United States v. Lippert, 740 F.2d 457 (6th Cir.1984); Frank v. Blackburn, 646 F.2d at 885; Martin v. Blackburn, 606 F.2d 92 (5th Cir.1979), cert. denied, 446 U.S. 911, 100 S.Ct. 1841, 64 L.Ed.2d 265 (1980); United States v. Cunningham, 529 F.2d 884, 888 (6th Cir.1976). Indeed, were the rule otherwise, and as defense counsel in this case explicitly recognized, all plea negotiations would necessarily be futile, since a defendant like Frazier could reject any offer with riskless impunity in the certain knowledge that, even if the jury found against him, the offer represents the outer limits of his possible exposure. But just as the Constitution does not forbid plea bargaining, it cannot be deemed to require  as it would if Frazier's position were accepted  the destruction of the process through the elimination of the shared understanding of its essential elements which forms its very foundation.
[I]t stretches our credulity to think that one who declines to plead guilty with a recommended sentence acceptable to the court should nevertheless be given the benefits of a bargain available to, but rejected by, him.
United States v. Resnick, 483 F.2d 354, 358 (5th Cir.1973), cert. denied, 414 U.S. 1008, 94 S.Ct. 370, 38 L.Ed. 246 (1973); People v. Davis, 48 Ill.Dec. at 663, 416 *451 N.E.2d at 1185;[6]People v. Morgan, 59 Ill.2d 276, 281-82, 319 N.E.2d 764, 767-68 (1974).
Affirmed.
BARKDULL, J., concurs.
HUBBART, Judge (dissenting)
Chief Judge Schwartz has authored an able opinion for the court in this most troubling case and makes, in my judgment, the best possible argument for affirming the sentence appealed from. Ultimately, however, I remain unconvinced by this valiant effort and must dissent from the result reached because: (1) the trial court impermissibly deviated from our prior mandate in this cause, and (2) the sentence originally imposed impermissibly penalized the defendant for exercising his Fifth Amendment right not to plead guilty and his Sixth Amendment right to a jury trial. I would therefore reverse the sentence under review and remand with directions to the trial court to impose a sentence in accordance with the trial judge's original plea offer of six years imprisonment.
In the prior appeal in this cause, we held that the twenty-five year total sentence imposed in this case was "presumptively unlawful" as it constituted, in effect, a penalty on the defendant's exercise of his Fifth Amendment right not to plead guilty and his Sixth Amendment right to a jury trial. We reached this conclusion based on the undisputed showing in the record that the trial judge imposed a sentence four times greater, and nineteen years longer, than the sentence the trial judge himself had offered to the defendant in open court after all the evidence had been adduced at trial.[1] Moreover, no pre-sentence investigation was ever ordered in the case and we were unable to discern any real reasons in the record, other than the jury verdict, for such a drastic increase in the sentence. We stated:
"But we simply cannot determine from this record what factors the court took into account in imposing a sentence four *452 times more severe than that which had been offered, which offer was renewed even after the conclusion of all the evidence. When a trial judge imposes a sentence upon a defendant after trial, which is more severe than the plea offer made by the court after it has heard all the evidence, the reasons for the more severe sentence must affirmatively appear in the record so as to assure the absence of vindictiveness. Cf. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Because of the total absence of reasons for the more severe sentence we find the sentence presumptively unlawful.[1]"
Fraley v. State, 426 So.2d 983, 985-86 (Fla. 3d DCA 1983). We further stated in footnote 1 of the opinion as follows:
"...
We do not question the validity of the sentence in this case merely because of the disparity between the plea offer and the sentence after trial. The Supreme Court of the United States has held that it is constitutionally permissible for the state to extend a benefit to a defendant who in turn extends a substantial benefit to the state and who demonstrates by his plea that he is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary. Brady v. United States, 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1969). We emphasize that this case is singled out because of three unusual circumstances, (1) the offer was renewed by the court at the conclusion of the evidence after the labors of trial were substantially completed, (2) no presentence investigation was conducted, nor is there evidence of any other appropriate factors the court might have considered, (3) the sentence finally imposed is, by comparison with the last plea offer, strikingly harsh."
426 So.2d at 986 n. 1.
We accordingly affirmed the judgment of conviction and remanded for further proceedings on the sentence, with our mandate reading as follows:
"The judgment of conviction is AFFIRMED, and the cause is remanded to the trial court with instructions to resentence the defendant in accordance with the plea offer or to make record findings supportive of the more severe sentence."
Id. at 986.
Upon remand, the trial judge, in my view, totally deviated from this mandate which, without dispute, he had no authority to do under the established law of Florida.[2] First, he did not, as ordered, "resentence the defendant in accordance with the plea offer," to wit: six years imprisonment. Instead, he resentenced the defendant to twenty years imprisonment which he plainly had no authority to do under our mandate. Second, he did not "make record findings supportive of the more severe sentence" and then leave the original severe sentence of twenty-five years standing. As previously noted, he instead mitigated the twenty-five year sentence to twenty years, and proceeded to explain on the record  which we had not directed him to do  why he had made the original six-year plea offer to the defendant, an offer which he characterized as "a fair plea offer which all sides agreed it was fair." Without going into his reasons for making the offer which the court recognizes are dubious at best, 467 So.2d at 449 n. 5, it is plain that *453 the trial judge in no way explained why he imposed a sentence four times more severe than, and nineteen years in excess of, the "fair plea offer" that he originally made to the defendant after all the evidence was in at the trial. He made no record findings, as required by our mandate, which would remotely justify such a startling increase in sentence. It is surely no justification for this increase to say, as he did, that he usually imposes twenty-five year sentences for robbery convictions; the fact remains, he saw this case as calling for a "fair" sentence of six years imprisonment and has given no justifiable reason for changing his mind so drastically thereafter. He also candidly admitted that he in no way based the increase on the defendant's subsequent testimony at the probation violation hearing. Plainly, the trial court has not complied with our mandate and the sentence under review must be reversed for that reason.
Second, it seems clear beyond peradventure, based on this record, that the sole reason for the drastic fourfold increase in sentence was the jury verdict itself. This is so because the jury verdict, and nothing else, is the only significant event which occurred subsequent to the "fair plea offer" made by the trial judge himself. The verdict, and only the verdict, explains why the judge decided to impose such a severe sentence as compared with his original "fair" plea offer. Without dispute, he learned no new facts about the crime or the defendant subsequent to the plea offer to justify such a drastic increase; moreover, the differential in sentence between the plea offer and the sentence imposed is so drastic that, in my view, it exceeds the fair limits of reasonable plea bargaining negotiations. See Fraley v. State, 426 So.2d at 986 n. 1. Beyond that, the trial judge's candid comments on the record upon remand only confirms this analysis. He revealed with commendable forthrightness  and his honesty is certainly appreciated  what can only be described as a "carrot and stick" approach to plea bargaining which he openly employed in this case. He admittedly feared an acquittal in the case and wanted a conviction; he therefore continually offered the defendant attractive plea offers in an effort to get him to plead guilty. When the "carrot" approach proved unsuccessful and the trial proceeded resulting in a jury conviction, it was time for the "stick" approach to be employed and thus the fourfold increase in sentence was imposed herein. To attempt to explain it any other way, as the court valiantly tries to do in its opinion, is quite frankly to put one's head in the sand.
We correctly stated the applicable law in cases of this nature in the prior Fraley opinion.
"The law is clear that any judicially imposed penalty which needlessly discourages assertion of the fifth amendment right not to plead guilty and deters the exercise of the sixth amendment right to demand a jury trial is patently unconstitutional. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (a statute, violation of which is punishable by death on a jury's recommendation, but which assures no execution if the accused enters a guilty plea, is invalid because it encourages guilty pleas); Thomas v. United States, 368 F.2d 941 (5th Cir.1966) (imposition of harsher punishment as a result of defendant's refusal to waive his fifth amendment rights held improper); R.A.B. v. State, 399 So.2d 16 (Fla. 3d DCA 1981) (decision to adjudicate juvenile delinquent based upon his assertion of fifth amendment right to remain silent and right to plead not guilty was improper); McEachern v. State, 388 So.2d 244 (Fla. 5th DCA 1980) (court could not impose a more severe sentence because of the costs and difficulty involved in proving the State's case); Gillman v. State, 373 So.2d 935 (Fla. 2d DCA 1979) (defendant's choice of plea should not have played any part in the determination of his sentence); Hector v. State, 370 So.2d 447 (Fla. 1st DCA 1979) (defendant's failure to confess to crime is an improper consideration in imposing sentence). Compare United States v. Grayson, 438 U.S. 41, *454 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978) (sentencing court can properly give consideration to defendant's false testimony observed by the judge during trial)."
426 So.2d at 985.
It is therefore clear, based on the established law and this record, that the twenty-five year sentence originally imposed herein was an unconstitutional sentence and should have been vacated by the trial court upon remand. I would, accordingly, reverse the sentence appealed from and remand the cause to the trial court with directions to impose a six-year sentence in accordance with the original plea offer made by the trial judge below.
Based on the above-stated reasons, I respectfully dissent.
Before SCHWARTZ, C.J., and BARKDULL, HENDRY, HUBBART, NESBITT, BASKIN, DANIEL S. PEARSON, FERGUSON, and JORGENSON, JJ.

On Hearing En Banc
PER CURIAM.
After oral argument before a panel of this court, this case was heard en banc at the request of a member of the panel because of the possibility that its decision might involve a departure from the prior decision in this case, Fraley v. State, 426 So.2d 983 (Fla. 3d DCA 1983). See Fla.R. App.P. 9.331(a), (b); In re Rule 9.331, 416 So.2d 1127 (Fla. 1982). It is the determination of the en banc court that the foregoing panel opinion is not inconsistent with Fraley. The order for hearing en banc is therefore discharged.
SCHWARTZ, C.J., and BARKDULL, HENDRY, NESBITT, BASKIN, PEARSON and JORGENSON, concur.
HUBBART, Judge (concurring).
I concur in the court's decision to deny the request of one member of this court for an en banc hearing under Fla.R.App.P. 9.331(b), but not for the reason stated in the court's opinion above. A brief background of the rather complicated procedure followed in this case is, I think, in order as a predicate for explaining the basis on which I think the en banc hearing request should be denied.
This case was originally briefed and orally argued before a three-judge panel (Schwartz, C.J. and Barkdull, Hubbart, JJ.) of this court. Thereafter, a member of the panel requested an en banc hearing in the cause for the purpose of receding from our prior decision in this case. Fraley v. State, 426 So.2d 983 (Fla. 3d DCA 1983). A majority of the court acceded to this request and the court, sitting en banc, received briefs and oral argument from the parties. Subsequent thereto, the en banc court decided to vacate its order setting the cause for a hearing en banc and returned the cause to the three-judge panel for a decision. Today's order denying the en banc hearing request is the result of this process; today's panel opinion is also the result of this process.
I entirely agree that the en banc hearing request should be denied, but solely because I think our prior Fraley decision was correct and should be adhered to. I express no opinion on whether an en banc rehearing should be granted in view of the panel opinion filed today since the matter is not presently before us. No motion or judge request for such a rehearing en banc has been, or could be, made at this time. I therefore think it premature for the court to comment, as it does, on the asserted lack of conflict between today's panel opinion and our prior decision in Fraley; moreover, it plainly can form no basis for denying the en banc hearing request originally made by a member of this court.
I therefore concur in the court's decision to deny an en banc hearing in this cause for the reasons stated above.
FERGUSON, J., concurs.
NOTES
[1] Frazier and Fraley are the same person.
[2] The defense declined his offer to recuse himself, so that another judge could resentence the defendant.
[3] The court also referred to the fact that he felt the defendant had lied at the subsequent probation hearing. This factor, even under Pearce, would justify an increased sentence. See United States v. Grayson, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), cited in Fraley, 426 So.2d at 985. We have placed this reference in a footnote, however, because the trial court candidly stated that this was not the primary motivating factor in the eventual sentence:

After that was over, still, in order to assist the defendant, I reset the matter for probation violation hearing.
At the time of the probation violation hearing, the defendant testified as well as, I believe, his mother reference the facts, and basically he said he didn't do it and offered an alibi which in my viewpoint was totally inconsistent with the physical evidence and with the identification by the victim.
In effect, yes, I felt he lied. There is no doubt about it.
Am I going to call him a liar under oath? No. There was no reason to do it. Why should I do it, but I felt he was a danger to society and so stated into the record.
[4] We agree with defense counsel who, in his able presentations below and here, has pointed out that the expression "vindictiveness" is simply a term of art which expresses the legal effect of a given objective course of action, and does not imply any personal or subjective animosity between the court (or a prosecutor) and the defendant.
[5] Insofar as the appellant's rights are concerned, it is immaterial that the court, rather than the state attorney, made the plea offer in this case. Compare Pearce and Perry with Bordenkircher. Moreover, as we have pointed out in Fraley, 426 So.2d at 986 n. 1, unlike the federal practice and that widely adopted elsewhere, no Florida rule presently proscribes or even limits judicial participation in the plea bargaining process. Nonetheless we suggest that the practice employed here  that of "discounting" an appropriate sentence in the light of the weakness of the state's case or the likelihood of its losing  is one which is uniquely prosecutorial in nature and, very arguably, ought not to be engaged in by a judicial officer, who must be seen to be an objective arbiter between the two sides, with no apparent interest in the outcome of the case or, more specifically, in whether a particular defendant is convicted. See United States v. Adams, 634 F.2d 830, 840-41 (5th Cir.1981); Blackmon v. Wainwright, 608 F.2d 183 (5th Cir.1979), cert. denied, 449 U.S. 852, 101 S.Ct. 146, 66 L.Ed.2d 64 (1980); State v. Wolfe, 46 Wis.2d 478, 175 N.W.2d 216 (1970); A. Alschuler, The Trial Judge's Role in Plea Bargaining, 76 Colum.L. Rev. 1059, 1103-1146 (1976). Hence, a supreme court revision or addition to the rules of criminal procedure in this respect may be in order.
[6] it not for the possibility of a higher sentence after trial, any guilty plea would be without consideration to support it. If a trial court could never impose a higher sentence after trial, the situation would arise ... that a defendant would enter a guilty plea, receive a sentence, then withdraw the plea with the guaranty that the trial court could not subsequently impose a greater sentence regardless of what evidence may be revealed at trial. Such a holding would seriously and unnecessarily erode the guilty plea procedures.
People v. Davis, 48 Ill.Dec. at 662-663, 416 N.E.2d at 1184-85 (1981).
[1] We set forth the trial judge's plea offers to the defendant in our prior Fraley opinion as follows:

"Our attention is directed to specific colloquies in the record:
[October 2]
[Defense counsel]: I have also explained the circumstances and the law to Mr. Fraley. I believe he understands it and he has decided not to accept either the State's offer or the Court's offer.
Court: The court's offer will be revoked at this time.
[Prosecutor]: State's also.
[October 28]
Court: I made an offer. The outstanding plea offer is rejected so we are in a trial posture.
[November 2, at commencement of the trial]
Court: Mr. Fraley, so we are on the record, you understand that the Court conveyed an offer to you of six years in the State pen on all cases and you are turning that down?
Defendant: Yes.
Court: Okay ... No more plea offers.
[November 5, after all the evidence had been presented to the jury]
Court: Offer is still open to Mr. Fraley, too.
"Court: Mr. Forman, let me say, in order to sweeten the pot, as far as your client is concerned, I will let him plead no contest to the armed robbery charge, let him appeal the probation violation of five years, with the understanding that if I would be reversed on the Probation Violation Hearing, I would vacate the sentence on the armed robbery no contest, we can start anew ... If I am affirmed on the Probation Hearing it sticks, six years on the armed robbery charge ... Talk to your client.
Court: I will give both defendants until 10:00 tomorrow to consider it.
[November 6, before the jury began deliberations]
Court: I want to know one thing. Are they taking the plea offer, yes or no?
Defendant: No."
426 So.2d at 984-85.
[2] Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 328 So.2d 825, 827 (Fla. 1975) ("A trial court is without authority to alter or evade the mandate of an appellate court absent permission to do so."); Jones v. Knuck, 388 So.2d 328, 329 (Fla.3d DCA 1980) ("Compliance with [an appellate] mandate is a purely ministerial act and the trial court may not depart from [the] mandate without ... consent."); Mendelson v. Mendelson, 341 So.2d 811, 813-14 (Fla. 2d DCA 1977) ("No principle of appellate jurisdiction is more firmly established than the one which provides that a trial court utterly lacks the power to deviate from the terms of an appellate mandate."); City of Miami Beach v. Arthree, Inc., 300 So.2d 65, 67 (Fla.3d DCA 1973) ("[U]pon the issuance of [a] mandate, the trial court is without authority to take any action other than to compose an order carrying out the terms of the mandate.").