667 So.2d 994 (1996)
A.S., a juvenile, Appellant,
v.
The STATE of Florida, Appellee.
No. 94-3022.
District Court of Appeal of Florida, Third District.
February 14, 1996.
Bennett H. Brummer, Public Defender and Marti Rothenberg, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General and Keith S. Kromash, Assistant Attorney General, for appellee.
Before JORGENSON, GERSTEN and GREEN, JJ.
GREEN, Judge.
A.S., a juvenile, appeals his adjudication of delinquency and resulting commitment to a *995 juvenile facility. A.S. argues that he is entitled to a new disposition hearing before a different judge because the trial court impermissibly relied upon the fact that he had maintained his innocence to the charged offense throughout the proceeding below. We agree and reverse.
A.S. was charged with the commission of an aggravated battery with a deadly weapon upon another juvenile. A.S. entered a plea of denial and an adjudicatory hearing was conducted by the court below. Although there were conflicting accounts among the various witnesses about whether A.S. was the actual perpetrator, A.S. was ultimately found and adjudicated by the court below to be delinquent as charged. The court immediately ordered Health and Rehabilitative Services ("H.R.S.") to hold a commitment conference and make its recommendation to the court pursuant to section 39.052(4), Florida Statutes (1993) at the later scheduled disposition hearing.
At the disposition hearing, H.R.S. recommended to the court that A.S. not be committed[1], receive a withhold of adjudication and be ordered to perform 20 hours of community service. The State, on the other hand, urged the court to adjudicate A.S. delinquent and commit A.S. to a level 6[2] facility, in large part, because A.S. had never shown remorse or accepted responsibility for the incident at any time during the proceeding below.[3] When the court gave A.S. an opportunity to speak on his own behalf, A.S. stated that he was sorry that the victim had been cut but he steadfastly maintained his innocence as the perpetrator. The trial court adjudicated A.S. delinquent, committed him to a level 4 juvenile group treatment home to be followed by 50 hours of community service, and reserved jurisdiction on the issue of restitution to the victim. In so doing, the trial court made it abundantly clear in the record that its disposition of this case was significantly influenced by A.S.'s continued protestation of innocence to the charge.[4]
"The law is clear that any judicially imposed penalty which needlessly discourages *996 assertion of the Fifth Amendment right not to plead guilty and deters the exercise of the Sixth Amendment right to demand a jury trial is patently unconstitutional. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968)." City of Daytona Beach v. Del Percio, 476 So.2d 197, 205 (Fla.1985) (quoting Gillman v. State, 373 So.2d 935, 938 (Fla. 2d DCA 1979), quashed on other grounds, 390 So.2d 62 (Fla.1980)); Hubler v. State, 458 So.2d 350, 353 (Fla. 1st DCA 1984); Fraley v. State, 426 So.2d 983, 985 (Fla. 3d DCA 1983), appeal after remand sub nom. Frazier v. State 467 So.2d 447 (Fla. 3d DCA), rev. dismissed, 475 So.2d 694 (Fla. 1985); McEachern v. State, 388 So.2d 244, 248 (Fla. 5th DCA 1980). As explained by the Florida Supreme Court in Holton v. State, 573 So.2d 284, 292 (Fla.1990), cert. denied, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991):
A defendant has the right to maintain his or her innocence and have a trial by jury. Art. I, § 22, Fla. Const. The protection provided by the fifth amendment to the United States Constitution guarantees an accused the right against self-incrimination. The fact that a defendant has pled not guilty cannot be used against him or her during any stage of the proceedings because due process guarantees an individual the right to maintain innocence even when faced with evidence of overwhelming guilt. A trial court violates due process by using a protestation of innocence against a defendant. This applies to the penalty phase as well as to the guilt phase under article I, section 9 of the Florida Constitution.
This constitutional right not to be unfairly penalized for the assertion of innocence and demand for trial is also enjoyed by juveniles in their criminal adjudicatory proceedings before the court. R.A.B. v. State, 399 So.2d 16 (Fla. 3d DCA 1981) (holding improper the decision to adjudicate a juvenile delinquent based upon his asserted fifth amendment right to remain silent and right to plead not guilty).
Most assuredly, as the State maintains, A.S.'s protestation of innocence throughout the proceeding below was not the sole factor in the court's decision to commit him to a juvenile facility. Nevertheless, we find that A.S.'s choice of plea should never have been a factor. See City of Daytona Beach, 476 So.2d at 205 ("[T]he defendant's exercise of the right to trial cannot be a factor in the sentencing decision."); see also Gillman, 373 So.2d at 939 (finding reversible error because "appellant's choice of plea should not have played any part in the determination of his sentence"). Because it is abundantly clear to us that it did, we conclude that A.S. is entitled to a new disposition proceeding. We therefore reverse and vacate the order of disposition and as stated in Hubler: "`[I]n an abundance of caution' to insure completely fair proceedings, we also `think it best ... that the appellant be resentenced by another judge to be assigned by the chief judge of the circuit.'" 458 So.2d at 354 (quoting Gallucci v. State, 371 So.2d 148, 150 (Fla. 4th DCA 1979), cert. denied, 383 So.2d 1194 (Fla.1980)).
Reversed and remanded with instructions.
NOTES
[1] H.R.S.'s stated reasons for this recommendation were that although this was a serious offense, (1) A.S. had never been in any trouble with the law prior to this incident and "the juvenile justice system is not set up to commit children to a program on their first charge."; (2) A.S. would be negatively exposed at the commitment facility to other juveniles who have been in the juvenile system for a long period of time; and (3) the child's mother was still very much in control of A.S. and had indeed imposed certain restrictions on A.S.'s activities in the aftermath of this incident.
[2] Subsection 39.01(61), Florida Statutes (1993) (amended and renumbered 1994, see § 39.01(59), Fla.Stat. (1995)) defines "restrictiveness level" as "the level of custody provided by programs that service the custody and care needs of committed children." Prior to the effective date of 1994 amendments, there were four levels commonly referred to as level 2, 4, 6 or 8. A "level six" placement was defined in section 39.01(61)(c), Fla.Stat. (1993) (now as amended at § 39.01(59)(c), Fla.Stat. (1995)) as a "moderate risk residential." These programs are for children assessed as being a "moderate risk to public safety," who require close "24-hour awake supervision" but who "do not need placement in facilities which are staff or physically secure." Chapter 94-209, § 11, at 1243, Laws of Fla. (codified at § 39.01(59)(e), Fla.Stat. (1995)) created a fifth security level, "maximum-risk residential."
[3] The prosecutor stated, among other things,

"... In my opinion, his failure to accept responsibility warrants more. There is no recommendation except for 20 hours of community service and a withhold. That's a slap on the wrist. I think this case warrants a lot more. I think it warrants an adjudication of delinquency, and I think it warrants a commitment to level 6 ..." (emphasis added)
[4] During its oral pronouncement of the disposition, the trial court stated, among other things:

"... I'm not so sure that's what we want in this time when violence in our community amongst young people is escalating. And especially, I've got a case here where this child is saying, `I didn't do it.' So I guess there was a phantom stabber that night, June 20. He didn't do it. And if she [victim] fell and there happened to be some bottles there, she fell against the broken bottle and cut her neck ..."
* * * * * *
"... I mean, this is a very bad act. This wasn't just a little pen knife that happened to be nearby or something. This was gotten and he came back to the scene. And now we have somebody saying, I didn't do it."
Further in its written order of disposition, the trial court expressly included its observation that A.S. showed no remorse for his action and maintained his innocence as reasons for the disposition of this cause.