26 So.3d 80 (2010)
T.R., a juvenile, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D08-808.
District Court of Appeal of Florida, Third District.
January 20, 2010.
Rehearing Denied February 10, 2010.
*81 Carlos J. Martinez, Public Defender, and Howard K. Blumberg, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Michael C. Greenberg, Assistant Attorney General, for appellee.
Before GERSTEN and SHEPHERD, JJ., and SCHWARTZ, Senior Judge.
SHEPHERD, J.
T.R., a juvenile, appeals her withhold of adjudication and sanction for simple battery. She argues she is entitled to a new disposition hearing before a different judge because the trial court impermissibly relied upon the fact that she maintained her innocence to the charged offense throughout the proceeding below. We agree and reverse.
T.R. was charged with simple battery for smacking the victim, a fellow student, with her lunch box at a bus stop for allegedly making sexually offensive remarks to T.R. T.R. maintained her innocence and requested an adjudicatory hearing by the court below. The only two witnesses at the adjudicatory hearing were the victim and T.R. The evidence was conflicting as to whether T.R. intentionally swung her lunch box at the victim, or whether it accidentally hit the victim as T.R. maneuvered to try to get away from the victim. At the conclusion of the hearing, the trial court judge found T.R. guilty as charged, stating:
[T]his is something that should have been resolved by the parents a long time before this got to me, but for whatever reason it was not, so therefore it was placed in front of me, and I have a legal obligation to follow where the evidence takes me ... to the inevitable conclusion that this, in fact, was a battery.
(emphasis added). The court then set the case for a later disposition hearing.
At the disposition hearing, the Juvenile Probation Officer (JPO) recommended that T.R. be referred to Juvenile Alternative Services Sanctions (JASS), a diversion program.[1] The State opposed the recommendation on the ground T.R. twice had been offered and rejected the same offer, once on the day before trial. According to the State, giving T.R. the same sanction post-adjudication as she was offered before trial "would be a get out of jail free card." The trial court agreed with the State and rejected the recommendation by the JPO, stating:

*82 I also have a specific recollection of taking a break in this case and sending everyone out of here to try to resolve the case in a different way, so that essentially this Court would not have to make a decision based on the facts that I heard in this case, and that was rejected by the defense.
There is [no] possible way for me to go ahead and offer this young lady diversion at this point in time.
The family rejected the Civil Citation, they rejected the JAS[S] offer, prior to the State bringing this case.
Everybody walked away from the opportunity that the Court gave them to try to resolve this case in a different way, at the time of trial, after I heard the majority of the case, and the facts before I rendered a decision.
At this point, this young lady has gone to Court, gone to trial, exercised her rights under the Constitution, and now it is my job to sentence her.
It is not the Department's job to make the State's decision to send her to a diversion program.
It is unfortunate that everybody walked away from the opportunity to have this case g[o] in a different direction. Unfortunately, here we are.
....
Perhaps there was another way of handling this case before, but we are not at that point anymore. We are beyond that point.
(emphasis added). The trial court withheld adjudication of delinquency and placed T.R. on reporting probation with conditions.[2]
Juveniles have a constitutional right not to be unfairly penalized for the assertion of innocence and demand for trial. A.S. v. State, 667 So.2d 994, 995-96 (Fla. 3d DCA 1996) ("`The law is clear that any judicially imposed penalty which needlessly discourages assertion of the Fifth Amendment right not to plead guilty and deters the exercise of the Sixth Amendment right to demand a jury trial is patently unconstitutional.'") (quoting City of Daytona Beach v. Del Percio, 476 So.2d 197, 205 (Fla.1985)) (internal citation omitted); Fraley v. State, 426 So.2d 983, 985 (Fla. 3d DCA 1983); R.A.B. v. State, 399 So.2d 16, 18 (Fla. 3d DCA 1981) (holding improper decision to adjudicate a juvenile delinquent based upon his asserted Fifth Amendment right to remain silent and right to plead not guilty); McEachern v. State, 388 So.2d 244, 248 (Fla. 5th DCA 1980). This is so even if the juvenile's desire to maintain her innocence was not the sole factor in the court's decision making process. A.S., 667 So.2d at 996.
The facts of this case are only slightly less compelling than those in A.S. In A.S., the H.R.S. (the predecessor to the Department of Juvenile Justice) recommended to the court that A.S. not be committed, receive a withhold of adjudication, and be ordered to perform twenty hours of community service. The prosecutor opposed the recommendation, stating:

In my opinion, his failure to accept responsibility warrants more. There is no recommendation except for 20 hours of community service and a withhold. That's a slap on the wrist. I think this case warrants a lot more. I think it warrants an adjudication of delinquency, *83 and I think it warrants a commitment to level 6[.]
Id. at 995.
Thereafter, the trial court stated:
I'm not so sure that's what we want in this time when violence in our community amongst young people is escalating. And especially, I've got a case here where this child is saying, `I didn't do it.' So I guess there was a phantom stabber that night, June 20. He didn't do it. And if she [victim] fell and there happened to be some bottles there, she fell against the broken bottle and cut her neck[.]
....
I mean, this is a very bad act. This wasn't just a little pen knife that happened to be nearby or something. This was gotten and he came back to the scene. And now we have somebody saying, I didn't do it.
Id. Further in its written order of disposition, the trial court expressly included its observation that A.S. showed no remorse for his action and maintained his innocence as reasons for the disposition of this cause. Id.
We concluded in A.S. the trial court had made it "abundantly clear" on the record that its disposition was influenced significantly by A.S.'s continued protestation of innocence. Id. at 996. Although the trial court here did not take the additional step taken in A.S. to commit his improper action to writing, it is our judgment that it also nevertheless is "abundantly clear" from the record provided that T.R.'s election to assert her innocence and demand a trial was at least "a factor" in the trial judge's adjudication and disposition of this case. See id.; see also B.R. v. State, 902 So.2d 333, 334 (Fla. 5th DCA 2005) (remanding for new disposition hearing in juvenile proceeding based, in part, upon trial judge's statement, "I don't admire the fact that you have taken up this Court's time, when this case could have been resolved appropriately").
For these reasons, we reverse the adjudication and disposition by the trial judge in this case, and remand the case for a new trial. In an abundance of caution and to insure completely fair proceedings, we remand for retrial and redisposition of T.R. before a different judge. See K.N.M. v. State, 793 So.2d 1195, 1198 (Fla. 5th DCA 2001); Hubler v. State, 458 So.2d 350, 353 (Fla. 1st DCA 1984).
Reversed and remanded with instructions.
NOTES
[1] The Juvenile Probation Officer's reasons for this recommendation were: (1) T.R. does not have a history with the Department; (2) T.R. has very good grades; (3) T.R. presented no risk of getting into trouble again; and (4) to avoid T.R. having a record with the State.
[2] The trial court required T.R. to: (1) attend and complete an anger management program; (2) write a letter of apology to the victim within thirty days and provide it to her probation officer; (3) report, in person, to her probation officer at least once a month; (4) perform twenty hours of community service; (5) go to school and continue to be a good student; and (6) pay restitution in an amount to be determined at a later time.