PEARSON, DANIEL S., Judge.
R. A. B. was adjudicated delinquent upon findings that he unlawfully entered a dwelling and committed a second-degree grand theft therein. The homeowner testified that he found his house broken into and property missing. The only other evidence presented was the juvenile’s confession.
R. A. B. first contends that his confession should have been suppressed, because the *17 State did not establish that he, prior to confessing, was given Miranda warnings. In the context of this case, that contention presents two issues — first, were Miranda warnings required; second, were they shown to have been given.
The juvenile confessed in the office of Mr. Paroti, the administrator of Boys Town. The confession was made in the presence of Paroti and a Detective Reese. The juvenile, suspected of committing the crimes with which he was later charged, was questioned by both Paroti and Reese. Paroti testified that the juvenile had been, as of the date of the confession, in the temporary custody of Boys Town for eight months. We judicially note that Boys Town is a privately funded institution. While it is possible that the Department of Health and Rehabilitative Services has, on occasion, placed juveniles in this facility, the circumstances under which R. A. B. was lodged in Boys Town are not reflected in this record, and we will not speculate that he was there under some court order as a result of some prior juvenile offense.
In the absence of a showing that R. A. B. was, at the time of his confession, in the custody of Boys Town because of a prior and unrelated juvenile offense, he is not entitled to the benefits of the Florida Supreme Court’s holding in Young v. State, 234 So.2d 341 (Fla.1970), which, following Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), makes quite clear that where a person suspected of committing an offense is in custody, albeit for an unrelated offense,[1] he is entitled to Miranda warnings prior to being questioned.[2]
But the inapplicability of the per se Mathis-Young rule does not end the inquiry if, in fact, it is shown that that interrogation itself was custodial. The burden of making that showing was R. A. B.’s[3] and no such showing was made. The record does not reflect how R. A. B. was called or came to be in Paroti’s office. The office itself (described as containing a door, two windows, three chairs, a desk, and a cabinet) does not suggest a custodial atmosphere. There is no showing that any pressure was exerted upon R. A. B. to remain during the questioning or even what part of the questioning was done by Paroti and what part by Detective Reese. The meeting during which the confession was taken concluded in thirty minutes. In short, there is nothing to indicate that the juvenile did not voluntarily go to Paroti’s office, or that once there he was not free to leave, or even that he held such a belief. We conclude, therefore, that R. A. B. was not entitled to Miranda warnings, and his confession was admissible in the absence of such warnings.[4]
*18 R. A. B.’s second point on this appeal is that even if the finding that he committed delinquent acts be affirmed, the order of adjudication must be reversed and the cause remanded to the trial court for a new determination whether adjudication should be entered or withheld. This point is well taken.
We have no difficulty concluding that the trial court’s decision to adjudicate R. A. B. a delinquent was based upon the impermissible consideration that the juvenile had asserted his Fifth Amendment right to remain silent, and his concomitant rights to plead not guilty and to have the State prove his guilt beyond a reasonable doubt at a trial. In explaining its decision to adjudicate R. A. B. a delinquent, the trial court stated:
“I think he was going to tell the truth. Had he come in and told me the same thing he told Mr. Paroti, I would have withheld adjudication and he could have been put on probation.

“You know my procedure and you know he could have admitted and not had a delinquency record.”
The law is clear that a court cannot, as the court did here, impose a penalty which unnecessarily discourages the assertion of such rights. McEachern v. State, 388 So.2d 244 (Fla. 5th DCA 1980); Gillman v. State, 373 So.2d 935 (Fla. 2d DCA 1979); Thomas v. United States, 366 F.2d 941 (5th Cir. 1966). See also Weathington v. State, 262 So.2d 724 (Fla. 3d DCA 1972). The very fact of adjudication, apart from disposition, has potential collateral effects which are not harmless. See, e. g., § 39.032(2)(d)4, Fla. Stat. (1980) (prior adjudication taken into account in detention decision); § 39.-09(2)(c)7c, Fla.Stat. (1980) (prior adjudication taken into account in waiver determination); see also Masci v. State, 397 So.2d 984 (Fla. 3d DCA 1981).
Accordingly, the finding that R. A. B. committed the delinquent acts charged is affirmed, and the order adjudicating him delinquent is reversed. The cause is remanded to the trial court for a new determination whether to withhold adjudication *19 under Section 39.10(2), Florida Statutes (1980), or to enter an order of adjudication under Section 39.10(3), Florida Statutes (1980). Since the trial judge who adjudicated R. A. B. no longer serves on the court, it is unnecessary to order that the matter be assigned to a different judge.
Affirmed in part; reversed in part, and remanded with directions.

. Compare United States v. Wiggins, 509 F.2d 454 (D.C.Cir.1975), and State v. Cole, 252 Or. 146, 448 P.2d 523 (1968) (although defendant in custody on unrelated offense, defendant not suspected of commission of crime about which being interrogated).

. The necessity for Miranda warnings which arises from this preexisting custody is not obviated by evidence, as in Young, that the defendant was not suddenly thrust into a foreign or hostile environment, that the interrogation was conducted in other than a jail cell, that no promises or threats were made to the defendant, or even that the defendant was told that he could get up and leave the room at any time. When the pre-existing custody status exists, even express permission to leave is “an illusory freedom, within the context of [the defendant’s] imprisonment,” Young v. State, supra. See also Lee v. State, 362 So.2d 692 (Fla. 4th DCA 1978). Thus, under the per se Mathis-Young rule, once it appears that the defendant is a suspect and is in custody for an unrelated offense, Miranda is activated.

. In State v. Dodd, 396 So.2d 1205 (Fla. 3d DCA 1981), we held that a defendant, asserting the invalidity of a confession because of the wrongful seizure of his person, bears the initial burden of establishing that he was seized. Where a person, as R. A. B. here, is questioned not, as Dodd, in a police station, his burden of showing he was in custody is obviously harder to satisfy.

. We do not suggest by this that Miranda warnings were not given, but merely that the State did not prove (or rather was prevented by the trial court from proving) that they were given. The State sought to have Paroti testify that Detective Reese advised R. A. B. of his Miranda rights and that R. A. B. understood and waived those rights. Notwithstanding that (1) Reese’s statements to R. A. B. were not hearsay, since not offered to prove the truth of *18 the matter contained in such statements; and (2) R. A. B.’s answers, although offered to prove the truth of the matter contained in such statements, were his own statements offered against him and thus exceptions to the rule making hearsay inadmissible, see, e. g., § 90.-803(13), Fla.Stat. (1979), the trial court sustained defense counsel’s hearsay objections to Paroti’s proposed testimony. It later appeared that Paroti could recall only that Reese read to R. A. B. from a card. Although this testimony was insufficient to establish that Miranda warnings were given, see Long v. State, 231 So.2d 33 (Fla. 3d DCA 1970); Woods v. State, 211 So.2d 248 (Fla. 3d DCA 1968); compare Tudela v. State, 212 So.2d 387 (Fla. 3d DCA 1968) (testimony that defendant was read his rights in absence of objection), the State offered to refresh Paroti’s recollection by showing him a Miranda card which Reese purportedly read to R. A. B. Again, the court erroneously sustained the defendant’s hearsay objection. A writing used to refresh recollection need not be one which was made by or previously seen by the witness, see § 90.613, Fla. Stat. (1979); Garrett v. Morris Kirschman & Company, Inc., 336 So.2d 566 (Fla.1976); Chaudoin v. State, 118 So.2d 569 (Fla. 2d DCA 1960); see generally McCormick, Evidence at 16 n. 54 (2d ed. 1972) (comparing decisions requiring that witness have authored or have ability to authenticate writing with those which permit any writing to be used). It thus appears that were it not for these erroneous rulings of the trial court, the State might have been able to establish that R. A. B. was given Miranda warnings.
Fortunately for the State, our holding, supra, makes these erroneous rulings inconsequential. We do, however, take this occasion to inform the State that the Florida Rules of Appellate Procedure expressly afford the State the right to appeal a “[r]uling on a question of law when a convicted defendant appeals his judgment of conviction.” Fla.R.App.P. 9.140(c)(1)(H). See Sands v. State, 328 So.2d 563 (Fla. 3d DCA 1976) (holding State has authority to cross-appeal under Section 924.07(4), Florida Statutes (1975), containing identical language). The State, whether out of ignorance or arrogance, consistently does not avail itself of this right of cross-appeal. Yet frequently the State is wrongfully precluded from introducing evidence which, if admitted, would be sufficient to sustain a conviction. When the State fails to cross-appeal in such a case, a defendant, entitled in actuality to a new trial, may receive the windfall of an acquittal. It is understatement to say that such a failure, indeed malfeasance, does not serve the proper administration of justice.