677 So.2d 890 (1996)
J.M., a juvenile, Appellant,
v.
The STATE of Florida, Appellee.
No. 94-1160.
District Court of Appeal of Florida, Third District.
June 26, 1996.
Rehearing Denied August 28, 1996.
*891 Bennett H. Brummer, Public Defender and Julie M. Levitt, Special Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General and Joni Braunstein, Assistant Attorney General, for appellee.
Before COPE, GERSTEN and GREEN, JJ.
GREEN, Judge.
J.M. was adjudicated delinquent and now appeals his commitment to the custody of the Department of Health and Rehabilitative Services ("HRS") after HRS recommended that J.M. be placed on community control. We reverse for the reasons which follow.
The State filed a petition for delinquency against J.M. after he was charged with sexual battery upon a minor. J.M. entered an admission to the reduced charge of lewd and lascivious act upon a person under the age of 16 pursuant to section 800.04, Florida Statutes (1993). HRS prepared a predisposition report which recommended that J.M. be placed in a level two moderate community control program. At the disposition hearing, J.M.'s counsel advised the court that he was in agreement with HRS' recommendation. The State objected to the recommendation but presented no evidence to counter HRS' predisposition report. The State urged only that J.M. should have no contact with the victim directly or through others.
The trial court adjudicated J.M. delinquent but committed J.M. to the custody of HRS for placement in a level four low risk residential program. The court's stated reasons for the departure were that (1) it found this offense to be especially heinous and serious; and (2) that the victim had gone through an experience that she would remember for the rest of her life. J.M. argues that because these reasons were not supported by a preponderance of the evidence, he is entitled to a new disposition hearing. We agree.

I.
Prior to reaching the merits of the appeal, we must briefly address the issue of whether a trial court's departure from the recommendations made by HRS in a delinquency disposition proceeding is appealable.[1] We conclude that the Florida legislature has clearly made appellate review available in the instant case pursuant to subparagraphs 39.052(3)(e)1 and 3, Florida Statutes (1993) (as amended by Chapter 93-230, section 8, Laws of Fla., effective May 15, 1993). Subparagraph 39.052(3)(e)3 states:
The court shall commit the child to the department at the restrictiveness level identified [by HRS] or may order placement at a different restrictiveness level. The court shall state for the record the reasons which establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department. Any party may appeal the court's findings resulting in a modified level of restrictiveness pursuant to this subparagraph. (emphasis added)
The dissenting opinion, on the other hand, finds that under paragraph 39.052(3)(k), Florida Statutes (1993), J.M. cannot seek appellate review of the decision to commit him to HRS custody. This section provides that:
It is the intent of the Legislature that the criteria set forth in paragraph (d) are general guidelines to be followed at the discretion of the court and not mandatory requirements of procedure. It is not the intent of the Legislature to provide for the appeal of the disposition made pursuant to this subsection (emphasis added).
We believe that the legislature meant the second sentence of paragraph *892 39.052(3)(k) to refer to the first sentence of the paragraph. That is to say, we believe the legislature did not intend to create an appealable issue out of the fact that the trial court considered only certain of the criteria listed in paragraph (d) and not other listed criteria.
Further, there is a second, more fundamental reason for why this statutory provision cannot be construed to preclude appellate review of a trial court's departure from the HRS recommendation against the commitment of a child. The commitment of a child to HRS is a deprivation of liberty which triggers significant due process protection under both the federal and Florida constitutions. See § 39.052, Fla. Stat. (1993)(specifically setting forth procedure for juvenile adjudicatory and disposition hearings); accord Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); In re T.A.F., 252 So.2d 255 (Fla. 1st DCA 1971)(while juvenile court proceedings are basically civil in nature, they are analogous in many respects to criminal proceedings; basic requirements of due process must be observed). We simply cannot agree with an interpretation of any statutory language which permits such a fundamental liberty interest to rest solely on the unbridled discretion of the trial judge.
If there were no recourse to appellate review, it could never be ascertained whether proper procedure was followed by the trial court or whether the trial court used impermissible considerations when it departed from HRS' recommendations and entered a disposition which committed the child to the department. And, if there is no appellate review of the trial court's disposition of the juvenile, there is no legal recourse, absent further action by the legislature, even were it learned that a trial court was using impermissible considerations in its disposition decisions. Indeed, a situation wherein the trial court used an impermissible reason to ignore a recommendation made by HRS in a disposition hearing of a juvenile recently presented itself to this very court. In A.S. v. State, 667 So.2d 994 (Fla. 3d DCA 1996), this court held that the trial court violated the juvenile's constitutional rights when it sentenced the child more harshly than HRS' recommendation because the child exercised his constitutional right to assert his innocence, even after adjudication as a delinquent. If, as a general matter, juveniles have no right to appeal their dispositions under § 39.052(3)(k), then A.S. would have to serve a significantly enhanced sentence as a result of his exercise of a fundamental constitutional right. Such a result, in our view, is unfathomable.
We believe that the legislature's intent to afford appellate review of a court's departure from an HRS recommendation is evident by the language in subparagraph 39.052(3)(e)3, which requires the trial court to state its reasons for departure on the record and, further, requires that the reasons for departure be established by a preponderance of the evidence. See § 39.052(3)(e)3. Further, subparagraph 39.052(3)(e)1 states that: "If the court determines that the child should be adjudicated as having committed a delinquent act and that he should be committed to the department, such determination shall be in writing or on the record of the hearing." In addition, "[t]he determination shall include a specific finding for the reasons for the decision to adjudicate and to commit the child." We think that these requirements serve no purpose except for aiding meaningful appellate review of the disposition.
Finally, it is a firmly established principal of statutory construction that a specific statutory provision is to govern any conflicting general statutory provision. Fletcher v. Fletcher, 573 So.2d 941 (Fla. 1st DCA 1991). Thus, to the extent that paragraph 39.052(3)(k) may arguably be construed as a general provision prohibiting any appellate review of delinquency disposition proceedings, it must yield to paragraph 39.052(3)(e) which expressly authorizes appellate review of a trial court's departure from recommendations made by HRS.

II.
Returning now to the merits of the instant appeal, we find that the trial court's stated reasons for its departure from the recommendation made by HRS were not established by a preponderance of the evidence. Strict compliance with the provisions *893 of this subparagraph is mandatory and the failure to comply constitutes reversible error. P.D.W. v. State, 621 So.2d 739 (Fla. 2d DCA 1993); M.H. v. State, 621 So.2d 527 (Fla. 2d DCA 1993).
In this case, the State did not represent to the court that the victim was especially traumatized by this incident, nor did it produce any evidence from the victim, her representative or an expert from which the trial court could reach such a conclusion. In fact, it does not appear from the predisposition report that the victim or anyone with knowledge of the victim's reaction to the incident was ever interviewed in preparation for the disposition hearing in this case.[2] Other than stating at the hearing that the State disagreed with the HRS recommendation because the crime was "rather serious", the State presented no evidence, and made no argument, that the commission of this offense to this particular victim was more egregious than to other similarly situated victims.
It is beyond peradventure that every victim of a crime will be emotionally impacted and will have a lasting impression of the incident. That fact alone, however, is insufficient to support a departure. The role of trial courts is to adjudicate based upon evidence presented. Absent evidence of emotional trauma, we are left only with the bare, unsupported conclusions of the trial court with regard to the crime, and its suppositions about the victim's reaction to the crime, which we think are insufficient to sustain a departure from HRS' recommendations. Cf. Hankey v. State, 485 So.2d 827, 828 (Fla. 1986)(where the only evidence that the victim suffered emotional trauma came from the blanket assertions of the trial court, it was error to depart from the guidelines).
Finally, we do not believe that this case is moot even though, as the dissent correctly points out, the juvenile has served his residential sentence and has been released by HRS. Depending upon the evidence, if any, presented at the new disposition hearing on remand, the trial court, in its finding of delinquency, may conceivably decide to withhold adjudication, impose a less restrictive sentence and give the juvenile credit for the original sentence served or suspend entry of sentence altogether.[3] As stated by this court in R.A.B. v. State, 399 So.2d 16, (Fla. 3d DCA 1981): "The very fact of adjudication, apart from disposition, has potential collateral effects which are not harmless." Id. at 18. Indeed, a withhold of adjudication as opposed to an adjudication for this offense would certainly be relevant to future dispositions if this juvenile is ever rearrested or if he decided to enter a profession which required him to disclose any juvenile record. See § 39.045, Fla. Stat. (1993).
For the foregoing reasons, we reverse and remand for a new disposition hearing.
GERSTEN, J., concurs.
COPE, Judge, dissenting.
I respectfully dissent. In this juvenile delinquency case the trial court: 1) adjudicated J.M. delinquent; 2) committed J.M. to the Department of Health and Rehabilitative Services ("Department");[4] and 3) ordered that J.M.'s restrictiveness level be level 4, a low risk residential placement. The majority opinion reverses all of these determinations and remands for a new disposition hearing on all issues.
I must respectfully disagree because the juvenile delinquency statute expressly forbids *894 appellate review of the disposition chosen by the trial court. § 39.052(3)(k), Fla. Stat. (1993). "Disposition" is a term of art which means the sentence imposed in a juvenile case.[5]Id. In this case, the disposition selected by the trial court is the adjudication of J.M. delinquent and the commitment of J.M. to the Department. Id. § 39.054(1)(c).[6] By virtue of paragraph 39.052(3)(k), this court is not permitted to review, or reverse, the trial court's discretionary sentencing decision.
The juvenile delinquency statute allows a child to appeal his restrictiveness levela statutory security classificationwhere, as here, the trial court selects a restrictiveness level other than one recommended by the Department. Id. §§ 39.052(3)(e)3, 39.01(61). Consequently this court has the power to review J.M.'s appeal of his assignment to the "low risk residential" restrictiveness level. However, J.M. completed his incarceration prior to oral argument of this appeal. The question of what restrictiveness level should govern J.M.'s period of commitment to the Department is now moot, and J.M.'s appeal on that issue should be dismissed.

I.
At the time relevant here, J.M. was an eighth grade student at a middle school. While at school, he physically restrained a female student while a codefendant inserted his hand into her pants and digitally penetrated her. The codefendant then held the female student while J.M. fondled her, but without digital penetration. The State charged sexual battery. J.M. entered a negotiated plea to a reduced charge of lewd or lascivious act upon a child, with the disposition left up to the court.
A Department caseworker submitted a predisposition report to the judge. The caseworker recommended community control, along with community service, psychological treatment, and an order to have no contact with the victim. Essentially, the caseworker felt that because J.M. had no prior record, had shown remorse, and had good family support, that J.M. was a good risk for community supervision. The State objected to the recommendation, contending that the sanction was insufficient in view of the crime. The trial court agreed with the State and ruled that a more severe sanction was required, given the seriousness of the offense. The court committed J.M. to the Department and ordered a level 4 restrictiveness level, which is a "low-risk residential" classification. Id. § 39.01(61)(b).[7] J.M. has appealed.
At oral argument of the appeal, we were advised by defense counsel that J.M. had already served his term of commitment in the HRS residential program, and had been released to community supervision. See id. § 39.067.

II.
At the outset it is important to distinguish between an appealable order, and an appealable *895 issue. In this case the trial court entered a final order which adjudicated J.M. delinquent and committed him to the custody of the Department. The judicial labor ended, and the commitment order was a final, appealable order. See § 39.069(1), Fla. Stat. (1993). J.M. was authorized to appeal that order and bring to this court his claims of error. Id.
It does not follow, however, that every point J.M. desires to raise on appeal constitutes an appealable issue. J.M. may only raise issues on appeal as to which the law allows him to obtain appellate relief. By way of illustration, in adult sentencing cases the rule is that a defendant cannot obtain review of a discretionary choice of sentence (e.g., prison versus probation; adjudication versus withhold of adjudication; length of sentence within the legal maximum or, after 1983, within the guidelines). See infra section III. B. Thus, on appeal from a final judgment in an adult criminal case, the final judgment is an appealable final order. But if the law allows the sentencing judge to impose, for example, either probation or imprisonment, the trial court's discretionary choice of one or the other will not be disturbed on appeal.
The juvenile statute carries forward this traditional rule. A juvenile has a right to appeal the disposition order as a final order. He may raise on appeal any issues on which the law will grant appellate relief. He cannot obtain review of a trial court's discretionary choice among allowable dispositions (commitment to the Department versus community control; imposition of adjudication versus withhold of adjudication). He can raise any procedural error, any claim of constitutional error, and any claim that an illegal disposition was imposed. Additionally, the statute allows the juvenile to appeal the restrictiveness levela security classification. In other words, the law will grant appellate relief on a number of juvenile sentencing issuesbut will not grant relief where the challenge is the trial court's discretionary choice among permissible disposition alternatives.
In no way do I suggest that J.M. is prohibited from filing an appeal of his disposition order. To the contrary, the disposition order is a final order which he is allowed to appeal as a matter of right. The principal issue he seeks to raise here, however, is a challenge to the trial court's discretionary choice among permissible sentencing options. That is not an appealable issue, i.e., not an issue as to which the law will grant appellate relief.

III.

A.
In this case J.M. entered a negotiated plea of guilty to a reduced charge, with disposition left up to the court. The procedures for the disposition hearing are spelled out in subsection 39.052(3), Florida Statutes. This subsection proceeds "by the numbers," that is, the trial court is supposed to proceed in sequence through each of the steps outlined in subsection 39.052(3).
The longstanding legislative policy is for a delinquent child to be treated in community-based programs where that can be done consistent with protection of the public. Consequently, the thrust of subsection 39.052(3) is to require the trial court to consider in each case whether there is an appropriate community-based alternative instead of committing the child to the Department. See id. § 39.052(3)(a). The court is directed to order a predisposition report, review the file, and order any other evaluations which may be helpful. Id. § 39.052(3)(a), (b). The State, the victim, the child, and the parents are to have an opportunity to comment on the issue of disposition. Id. § 39.052(3)(c)4.
The statute requires the trial court to make a determination whether to adjudicate the child delinquent and commit the child to the Department. Id. § 39.052(3)(d). Paragraph (d) of the statute lists seven criteria which the trial court is required to consider in making its decision. Id.[8] Findings are *896 required if the child is to be adjudicated delinquent and committed to the Department. § 39.052(3)(e)1.
Additionally, if the child is to be committed to the Department, the court must order a specific "restrictiveness level." Id. § 39.052(3)(e)2. The court must consider Department's recommendation on this issue. Id. § 39.052(3)(e)3. If the court orders a different restrictiveness level than the one recommended by the Department, the court must state for the record its reasons for doing so. Id. The statute then says, "Any party may appeal the court's findings resulting in a modified level of restrictiveness pursuant to this subparagraph." Id.[9]
Finally, subsection 39.052(3)the subsection governing disposition hearingsends by stating:
(k) It is the intent of the Legislature that the criteria set forth in paragraph (d) are general guidelines to be followed at the discretion of the court and not mandatory requirements of procedure. It is not the intent of the Legislature to provide for the appeal of the disposition made pursuant to this subsection.

(Emphasis added).[10]
As a textual matter, subsection 39.052(3) authorizes an appeal of one issue and forbids an appeal of another issue. The statute authorizes an appeal of the restrictiveness level assigned to the child, if that restrictiveness level differs from the one recommended by the Department. Id. § 39.052(3)(e)3. The statute forbids appellate review of the disposition chosen by the trial court, id. § 39.052(3)(k), which in this case is the decision to adjudicate the child delinquent and commit him to the Department.

B.
It may not be self-evident why the legislature prohibited review of the dispositionthe juvenile sentencewhile at the same time allowing an appeal of the restrictiveness levelthe security classification the child has been assigned. There is, however, a simple explanation for the statutory scheme. In order to understand the statutory purpose, it is necessary first to examine the traditional rules regarding sentencing appeals.
Many Florida decisions state the general rule that a trial court's discretionary choice of sentence is not subject to appellate review, so long as the sentence is within the legal maximum. "It is established in this State that a determination of the sentence to be *897 imposed falls within the discretion to be exercised by the trial court. The exercise of discretion will not be disturbed if the sentence imposed does not exceed the bounds established by statute." Infante v. State, 197 So.2d 542, 544 (Fla. 3d DCA 1967) (citations omitted); see also Darby v. State, 216 So.2d 29, 30 (Fla.1968); Davis v. State, 123 So.2d 703, 707 (Fla.1960); Walker v. State, 44 So.2d 814, 815 (Fla.1950); Brown v. State, 152 Fla. 853, 13 So.2d 458, 461 (1943); Blackman v. State, 265 So.2d 734, 736 (Fla. 3d DCA), cert. denied, 269 So.2d 371 (Fla.1972), cert. denied, 411 U.S. 972, 93 S.Ct. 2157, 36 L.Ed.2d 695 (1973); 4 Charles E. Torcia, Wharton's Criminal Procedure § 542 (13th ed.1992).
It is important to note the reasons for this rule. The rule grew up partly because sentencing was viewed as requiring a highly fact-specific determination based on the circumstances of the offender's crime and individual background. More fundamentally, however, there were no judicially manageable standards for appeals courts to apply in reviewing the sentence chosen by the trial court. Lacking any yardstick which would allow the appellate courts a way to measure the appropriateness of individual sentences, the appellate courts declared that the trial court's discretionary choice of sentence would not be reviewed on appeal.
To be sure, there were exceptions to the general rule. First, if a trial court failed to follow the prescribed procedure at sentencing, the defendant could appeal the procedural error and obtain a new sentencing hearing. See, e.g., I.H. v. State, 584 So.2d 230 (Fla. 5th DCA 1991). Second, if there was an indication that the trial court had engaged in retaliatory sentencing, or had otherwise considered an impermissible factor in sentencing, then the defendant could obtain a new sentencing hearing, possibly before a different judge. See, e.g., Alabama v. Smith, 490 U.S. 794, 798-99, 109 S.Ct. 2201, 2204-05, 104 L.Ed.2d 865 (1989); Cavallaro v. State, 647 So.2d 1006, 1006-07 (Fla. 3d DCA 1994).
These exceptions aside, as a general rule the trial court's discretionary choice of sentence was not deemed to be subject to appellate review. Although the courts recognized that this "handsoff" approach allowed there to be disparity among defendants in the sentences imposed, the general theory was that any inconsistency in sentences was a matter which would be appropriately resolved by the parole authorities, Stanford v. State, 110 So.2d 1, 2 (Fla.1959), or as a matter of clemency by the pardon board. See Brown v. State, 152 Fla. 853, 13 So.2d 458, 461 (1943).
In 1983 the legislature changed the rules applicable to adult felony sentencing by enacting sentencing guidelines. See § 921.001, Fla. Stat. (1993); Fla. R.Crim. P. 3.701; ch. 83-87, § Laws of Fla. The sentencing guidelines created standards of appellate review and authorized sentencing appeals in felony cases. This was a dramatic break with prior practice. No such sentencing guidelines were enacted, however, for the juvenile justice system.

C.
Against the foregoing background, it becomes clear why the legislature enacted paragraph 39.052(3)(k), which precludes review of the disposition imposed by the trial court in a juvenile delinquency case.
Prior to 1978, the juvenile delinquency statute did not contain any criteria to aid the trial court in deciding whether to commit a child to the Department. See, e.g., § 39.09(3), Fla. Stat. (1973).[11] In 1978 the legislature amended the juvenile delinquency statute to add a very detailed list of criteria for the trial court to use in determining whether to commit a child to the Department. Ch. 78-414, § 13, Laws of Fla.; presently § 39.052(3)(d), Fla. Stat.[12] The 1978 enactment required the trial court to make specific findings regarding the reasons to adjudicate the child delinquent and commit him or her to the Department. Ch. 78-414 § 13, Laws of Fla.; presently § 39.052(3)(e)1, Fla. Stat. (1993).
*898 The 1978 legislation broke new ground in juvenile sentencing by enacting specific criteria which trial courts were required to use in committing a delinquent child to the Department. The trial court was required not only to consider the criteria, but to state the sentencing reasons in an order or on the record. In theory, these criteria and procedures would have allowed the appeal of the trial court's sentencing decision, since for the first time there were specific statutory criteria and specific findings which an appellate court could review.
To guard against this possibility, the 1978 legislature also enacted paragraph 39.052(3)(k) which states:
(k) It is the intent of the Legislature that the criteria set forth in paragraph (d)[the criteria for committing a child to the Department] are general guidelines to be followed at the discretion of the court and not mandatory requirements of procedure. It is not the intent of the Legislature to provide for the appeal for the disposition made pursuant to this subsection.
Id.; see ch. 78-414, § 13, Laws of Fla.
By enacting paragraph 39.052(3)(k), the legislature simply codified the traditional rule that the trial court's choice of disposition was a matter left to the discretion of the trial court, and could not be overturned on appeal. Paragraph 39.052(3)(k) means that the trial court's juvenile sentencing decision is not subject to appellate review, so long as proper procedure is followed and no impermissible consideration is employed in imposing the juvenile sentence.
It is important to note that paragraph 39.052(3)(k) has remained intact from 1978 to the present.

D.
The next question is why the legislature enacted subparagraph 39.052(3)(e)3, which allows a child to appeal the restrictiveness level which has been assigned by the trial court. If there is a general rule that the trial court's choice of disposition is not subject to appeal, why would the legislature single out the restrictiveness level as a matter which can be appealed? There is also a simple answer to this question.
Historically, once a child was committed to the Department, it became the Department's sole responsibility and prerogative to decide where to place the child. See B.J.M. v. Department of Health & Rehabilitative Servs., 627 So.2d 512, 515 (Fla. 3d DCA 1993), approved in part and quashed in part, 656 So.2d 906 (Fla.1995); Department of Health & Rehabilitative Servs. v. R.S., 567 So.2d 532, 532-33 (Fla. 5th DCA 1990). The trial judge could recommend, but could not order, that a child be placed in a specific program. The theory was that the juvenile correctional professionals were in a better position to make informed placement decisions, and that juvenile correctional administrators would also more efficiently match committed delinquent children with available bed space. The Department acted as its own parole authority, and made the determination when the child would be released into the community on juvenile parole.
Over the years, there was an undercurrent of complaint from juvenile court judges who believed they should have greater control in deciding to what facility a committed delinquent child should be sent. See B.J.M. v. Department of Health & Rehabilitative Servs., 627 So.2d at 515. In 1981, the system was modified somewhat. If the trial court decided to commit the child to the Department, the Department was required to give the trial court a list of three placement options. Ch. 81-218, § 9, Laws of Fla., codified as § 39.09(3)(e), Fla. Stat. (1981). The court would then rank the Department's list in order of preference of the court. Id. The Department was required to follow the court's recommendation if space was available. Id. The court was, however, limited to the list of options chosen by the Department.
In 1990 the legislature made a significant change in the law to increase the powers of the juvenile court judge over placement of children committed to the Department. To do this, the legislature created "restrictiveness levels." Ch. 90-208, §§ 3, 5, Laws of Fla.; present version §§ 39.01(61), 39.052(3)(e), Fla. Stat. (1993). The court was granted the power to order a specific restrictiveness *899 level for a committed child, thus specifying the general class of program to which the child must be sent. The trial court was no longer restricted to a menu of choices listed by the Department. This meant that the initial classification decision about the committed child would be made by the judge, not Department professionals. From a juvenile correctional standpoint, this was a significant departure from past practice.
It is obvious that this new system of restrictiveness levels carried with it significant risks. One risk is the possibility of a significant placement error, such as placing a minimum risk child into a maximum custody facility, or vice versa. Another risk is the possibility that some facilities would be overloaded and others underutilized.
To guard against these risks, the legislature built two safeguards into the new system of restrictiveness levels. First, if the trial court decides to commit a child to the Department, the court must consider the Department's recommendation about the appropriate restrictiveness level. § 39.052(3)(e)2, Fla. Stat. (1993). Second, if the court disagrees with the Department recommendation and orders a different restrictiveness level, then the child or Department may appeal the restrictiveness level determination. Id. § 39.052(3)(e)3.[13]
For present purposes, the important point is that this is a very specific, very narrowly targeted right of appeal. It must be remembered that a restrictiveness level is assigned only to a child who has been committed to the Department. See §§ 39.01(61), 39.052(3)(e) 2-3, Fla. Stat. If the appellate court finds error in the trial court's assignment of restrictiveness level, the remedy is to assign a new restrictiveness level, or remand for the trial court to have a new hearing on that subject. The child remains a committed child. Paragraph 39.052(3)(k) continues unchanged in the statute, and continues to preclude review of the trial court's discretionary choice of disposition, namely, the decision to adjudicate and commit the child to the Department.
To sum up:
1. The trial court's discretionary decision to adjudicate a child delinquent and commit the child to the Department is not subject to appellate review. Id. § 39.052(3)(k).
2. A child (or the Department) can appeal the restrictiveness level, if the trial court assigns a level different from the one recommended by the Department. Id. § 39.052(3)(e)3.

E.
The majority opinion acknowledges that paragraph 39.052(3)(k) precludes appellate review of the disposition ordered by the trial court. However, the majority opinion concludes that paragraph 39.052(3)(k)'s proscription on appeal of the disposition is in head-on, irreconcilable conflict with subparagraph 39.052(3)(e)3, which allows an appeal of the restrictiveness level. The majority opinion reasons that since the child has been granted the right to appeal the restrictiveness level, surely that means the child can appeal the disposition.
Respectfully, I must disagree. As already explained, "disposition" and "restrictiveness level" are statutory terms of art. They are two different things. The statute is clear that one issue is appealable and the other is not, and there is a sound reason for the distinction.
In construing a statute, a court is obliged to reach a construction which harmonizes, and gives effect to, all of its parts if there is any reasonable basis to do so. In the Interest of T.M., 641 So.2d 410, 412 (Fla.1994); Romero v. Shadywood Villas Homeowners Ass'n, Inc., 657 So.2d 1193, 1196 (Fla. 3d DCA 1995). Only if there is no alternative should one part of a statute be deemed to nullify another part of the same statute.
In the present case a construction of the statute is available which gives effect to all of its respective parts. That is the construction *900 we must adopt, namely, that a child can appeal the restrictiveness level (the trial court's choice of level 4) but cannot challenge the disposition chosen (the trial court's decision to commit the child to the Department).
By contrast, the majority opinion violates these principles of statutory construction. It nullifies paragraph 39.052(3)(k) by allowing the child to appeal the trial court's discretionary choice disposition. In so holding, the majority opinion is in conflict with In the Interest of T.M., and Romero v. Shadywood Villas Homeowners Ass'n, and the cases cited therein.

F.
Although J.M. is not allowed to challenge the trial court's choice of disposition, he is allowed to appeal the restrictiveness level. § 39.052(3)(e)3, Fla. Stat. The problem is that this particular issue became moot prior to the oral argument in this case. We were informed at oral argument that J.M. had already served his period of incarceration and has been furloughed into the community. See id. § 39.067. Consequently, he is already in community supervision and has already attained the least restrictive level of supervision available. At this point there is no practical relief which J.M. can be granted, because he is no longer in residential custody. That being so, the appeal should be dismissed as moot.[14]

IV.
Having determined that this court has jurisdiction to review all aspects of the disposition order, the majority opinion reverses and remands for a new disposition hearing on all issues. In so doing, the majority opinion characterizes the trial court ruling as a "departure" from the Department's recommendation, and relies on adult sentencing guidelines cases to conclude that the trial court's findings were insufficient. I must respectfully dissent from application of adult sentencing guidelines cases to the juvenile system, for the two systems are totally different.[15]

A.
In announcing the disposition, the trial court stated:
The Court: I find this type of crime to be especially heinous. The only mitigation is your age. But the victim in this case has gone through an experience that she will unfortunately remember for the rest of her life.
It is therefore the judgment of the law and sentence of this court that you are adjudicated delinquent of this offense, committed to the Department of Health and Rehabilitative Services until your 19th birthday or their discretion for a lesser period of time. I have no discretion over that.
Additionally, therefore, I am committing you under level 4 commitment. Conference will need to be held by HRS to determine the proper placement for you. But because of the seriousness of this offense. That is my judgment.
These oral pronouncements encompass the trial court's reasons for deciding to commit J.M. to the Department and constitute, as *901 well, the court's reasons for selecting a level 4 commitment. When the trial court stated that its reason for committing J.M. to the Department was the seriousness of the offense, the court was relying on the plain words of Chapter 39. In determining the suitability or nonsuitability of the child for adjudication and commitment to the Department, the trial court is explicitly authorized to consider "[t]he seriousness of the offense to the community." Id. § 39.052(3)(d)1.
The statute provides, "If the court determines that the child should be adjudicated as having committed a delinquent act and that he should be committed to the department, such determination shall be in writing or on the record of the hearing. The determination shall include a specific finding of the reasons for the decision to adjudicate and to commit the child to the Department." Id. § 39.052(3)(e)1 (emphasis added). Consequently, when the trial court stated for the record its reasons for committing the child to the Department, the trial court was doing exactly what the statute requires.
To be sure, the trial court did not go through each of the seven statutory factors on the record. See § 39.052(3)(d)1-7. Fla. Stat. Certainly it would have been the better practice if the trial court had done so. However, the seven statutory factors are "general guidelines to be followed at the discretion of the court and not mandatory requirements of procedure. It is not the intent of the Legislature to provide for the appeal of the disposition made pursuant to this subsection." Id. § 39.052(3)(k). There simply is no basis on which to reverse, as being inadequate, the trial court's statement of reasons for committing the child to the Department.

B.
Assuming arguendo, however, that J.M. can appeal the trial court's discretionary choice of disposition in this case, the disposition order should be affirmed. Two districts have decided cases which assume, without discussion, that the choice of disposition can be appealed. See P.D.W. v. State, 621 So.2d 739 (Fla. 2d DCA 1993); M.H. v. State, 621 So.2d 527 (Fla. 2d DCA 1993); K.R. v. State, 584 So.2d 1132 (Fla. 5th DCA 1991); I.H. v. State, 584 So.2d 230 (Fla. 5th DCA 1991); T.H. v. State, 573 So.2d 1090 (Fla. 5th DCA 1991). Those cases do not discuss the question whether paragraph 39.052(3)(k) precludes review of the trial court's choice of disposition. Apparently the issue was never raised.
K.R., I.H., and T.H. hold that it is sufficient for the trial court to state that the offense "is a violent offense." 584 So.2d at 1133, 584 So.2d at 231, 573 So.2d at 1090.[16] Certainly, in the present case the seriousness of the offense was a proper reason. In holding to the contrary, the majority decision is in conflict with K.R., I.H., and T.H.

C.
Chapter 39 does allow for an appeal of the restrictiveness level. That part of the statute requires the trial court to
state for the record the reasons which establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department. Any party may appeal the court's findings resulting in a modified level of restrictiveness pursuant to this subparagraph.
Id. § 39.052(3)(e)(3).
I must concede that the perfunctory pronouncements of the trial court are inadequate on this point. Obviously, the trial court thought the offense was serious enough to warrant placement in a residential program. However, the court's pronouncements do not specifically address the statutory criteria for the relevant restrictiveness levels. See § 39.01(61), Fla. Stat. (1993). Consequently, if the matter were not moot I would join a remand for more detailed findings regarding the appropriate restrictiveness level. The problem is that J.M. has already completed his term of incarceration. There *902 would be no useful purpose served by a remand for further proceedings on this point.

D.
The majority opinion characterizes the trial court ruling as being a "departure" from the recommendation made by the Department. The majority opinion reasons that there must be evidence in the record which would support a conclusion that the offense was especially heinous, or the victim was especially traumatized, so as to justify a "departure" from the Department social worker's recommendation. The unspoken premise of the majority opinion is that adult sentencing guidelines precedent should be applied by analogy to juvenile sentencing. I respectfully disagree, for the analogy does not hold.
Adult sentencing uses statutory sentencing guidelines to determine length of sentence. The sentence which can be imposed is determined by a point score in which points have been assigned for the current crime, the defendant's prior record, and certain other factors. The legislature has adopted these guidelines, including the point scores, as statutes. See § 921.0015, Fla. Stat. (1993)(1988 version); id. § 921.0014 (version effective 1994). Consequently, the sentencing guidelines have the force of law.
In order to "depart" from the guidelines sentence, the trial court must articulate valid reasons for departure which are not already encompassed within the statutory point scores. The seriousness of the offense is, of course, already taken into account in the adult guidelines through the allocation of points to specific crimes. However, departure is authorized, inter alia, for a crime of violence which is especially heinous, atrocious, or cruel, id. § 921.0016(3)(b), or where there is extraordinary emotional trauma. Id. § 921.0016(3)(e); see also Hankey v. State, 485 So.2d 827, 828 (Fla.1986).
In its analysis of the merits of this juvenile case, the majority opinion in effect is saying that the subjective recommendation of an individual caseworker is the functional equivalent of a recommended guidelines sentence. The majority opinion then superimposes on the juvenile justice system the requirement that the victim has experienced extraordinary emotional trauma or that the crime be especially heinous.
That reasoning is inapplicable to juvenile cases because in the juvenile justice system there are no adult-style sentencing guidelines. In the juvenile system, the sentencing judge does not have the power to impose a sentence for a particular period of months or years. In an ordinary commitment order, like the present one, the juvenile is committed to the Department for an indeterminate period of time until he reaches the age of nineteen, unless sooner discharged by the Department. § 39.054(1)(c), Fla. Stat. (1993). The Department determines the exact period of incarceration, and determines when the juvenile will be furloughed back into the community. Id. § 39.067; Fla. Admin. Code R. 10H9.003.
What we are dealing with in the juvenile system is a predisposition report and the subjective evaluation and recommendation of the caseworker who wrote it. There is no reasonable basis on which to say that the caseworker's predisposition report should be given the force of law.[17] The juvenile delinquency statute says that the trial court shall "consider a predisposition report." Id. *903 § 39.052(3)(a) (emphasis added). The weighing of the various dispositional factors, id. § 39.052(3)(d), is a matter addressed to the discretion of the trial court. The entire system is geared toward having the trial judge make a reasoned decision based on the totality of the circumstances. See id. § 39.052(3).
The majority opinion also suggests that there was some insufficiency in the factual information which was placed before the trial court regarding the circumstances of the offense in this case. The juvenile delinquency statute provides, however, that the trial court "shall consider the child's entire assessment and predisposition report and shall review the records of earlier judicial proceedings prior to making a final disposition of the case." Id. § 39.052(3)(b). Florida Rule of Juvenile Procedure 8.340(a) allows the court to "receive any relevant and material evidence helpful in determining the proper disposition to be made.... Such evidence may be received by the court and may be relied upon to the extent of its probative value, even though not competent in an adjudicatory hearing." (Emphasis added).
The State and the child are granted advance access to the predisposition report so as to have a reasonable opportunity to correct any errors which may appear in it. In light of any additions or corrections, the court may then rely on the predisposition report and other information of record in deciding the disposition of the case. In the present case no objections were made to the accuracy of the predisposition report or the other material in the file.
In sum, a disposition hearing in a juvenile delinquency case should be analyzed exclusively under the juvenile delinquency statute. The law and procedures developed under the adult sentencing guidelines rest on wholly different assumptions and should not be imported into the juvenile delinquency system.

V.
The trial court's discretionary choice of disposition is not an issue which is subject to appellate review. That part of the disposition order which adjudicates J.M. delinquent and commits him to the Department must be affirmed.
The appeal of the restrictiveness level should be dismissed as moot.
NOTES
[1] Neither party raised this as an issue on appeal. After the briefs were submitted, the parties were requested by the court sua sponte to address this issue at oral argument.
[2] The predisposition report stated the facts of the instant offense from a report made by Detective Tom Breedlove of the Monroe County Sheriff's Department. The victim related the information to Detective Breedlove some time on or about January 12, 1994. The predisposition report was prepared April 8, 1994. The disposition hearing was May 2, 1994. The victim was listed as a witness on the State's pretrial catalogue but she did not testify. It is not clear from the record whether she or anyone from her family was present at the hearing.
[3] We, of course, express no opinion one way or another as to an appropriate disposition for this cause or whether or not J.M. should be adjudicated. We recognize that the trial court may reimpose the original disposition if appropriate evidence is adduced to support the same.
[4] Effective October 1, 1994, the juvenile delinquency programs of the Department of Health and Rehabilitative Services were transferred to the newly-created Department of Juvenile Justice. Ch. 94-209, §§ 1-2, Laws of Fla.; see §§ 20.316, 39.01(15), Fla. Stat. (Supp.1994).
[5] The allowable dispositions for an adjudicated delinquent child are listed in section 39.054. They are:

(a) community control
(b) commitment to licensed child-caring agency
(c) commitment to the Department of Health and Rehabilitative Services [now the Department of Juvenile Justice]
(d) revoke or suspend driver's license
(e) community service
(f) restitution
(g) community work project
(h) commitment to program for serious or habitual delinquent children.
§ 39.054(1)(a)-(h), Fla. Stat. (1993); see also Fla. R. Juv. P. Form 8.947 (standard form disposition order for delinquency cases, listing dispositions).
[6] In order to commit a child to the department it is necessary to adjudicate the child delinquent. See § 39.054(1), Fla. Stat. (1993). The decision to adjudicate the child delinquent (as opposed to withholding adjudication) is made as part of the disposition hearing. Id. § 39.052(3)(d).
[7] There are four restrictiveness levels: (a) minimum risk nonresidential; (b) low risk residential; (c) moderate risk residential; (d) high risk residential. Id. § 39.01(61).

The four restrictiveness levels are commonly referred to as levels 2, 4, 6, and 8. Level 4 corresponds to low-risk residential. The 2-4-6-8 numbering terminology is a holdover from the original 1990 rule which first promulgated restrictiveness levels. See B.H. v. State, 645 So.2d 987, 989-90, 994 (Fla.1994), cert denied, ___ U.S. ___, 115 S.Ct. 2559, 132 L.Ed.2d 812 (1995). The restrictiveness levels were subsequently enacted into statute without the original numbers. See § 39.01(61), Fla. Stat. (1993).
[8] The criteria are:

1. The seriousness of the offense to the community.
2. Whether the protection of the community requires adjudication and commitment to the department.
3. Whether the offense was committed in an aggressive, violent, premeditated, or willful manner.
4. Whether the offense was against persons or against property, greater weight being given to offenses against persons, especially if personal injury resulted.
5. The sophistication and maturity of the child.
6. The record and previous criminal history of the child, including without limitations:
a. Previous contacts with the department, the Department of Corrections, other law enforcement agencies, and courts;
b. Prior periods of probation or community control;
c. Prior adjudication of delinquency; and
d. Prior commitments to institutions.
7. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child if he is committed to a community services program or facility.
§ 39.052(3)(d), Fla. Stat. (1993).
[9] "This subparagraph" means subparagraph 39.052(3)(e)3. See 1 Fla. Stat. (1993), preface, at vii (describing statutory numbering system). The statutory subdivisions under discussion here are:
 Chapter 39
 Section 39.052
 Subsection 39.052(3)
 Paragraph 39.052(3)(k)
 Subparagraph 39.052(3)(e)3.

Subparagraph 39.052(3)(e)3, states in full:
(e)3. The court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons which establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department. Any party may appeal the court's findings resulting in a modified level of restrictiveness pursuant to this subparagraph.
(Emphasis added).
[10] "This subsection" refers to subsection 39.052(3). See supra note 6. The phrase "criteria set forth in paragraph (d)" refers to the seven criteria set forth in paragraph 39.052(3)(d); these are the criteria to be used in deciding whether or not to adjudicate the child delinquent and commit the child to the Department. See supra note 5.
[11] The 1973 statute provided for commitment to the former Division of Youth Services, at that time a division of the Department of Health and Rehabilitative Services.
[12] See supra note 5.
[13] The statute provides that "[a]ny party" may appeal. Id. It appears that in this context the Department is treated as a party. See id. § 39.052(3)(c)(4). Since the Department is the custodian of a committed child, the Department is also a party for purposes of appeal as defined in paragraph 39.069(1)(a).
[14] The majority suggests that the appeal is not moot because on remand the trial court might decide to withhold adjudication of delinquency and withdraw the commitment order. Respectfully, that is not so. A trial court's discretionary decision to impose adjudication, or withhold adjudication, is part of the trial court's sentencing decision. See Sanchez v. State, 541 So.2d 1140, 1141 (Fla.1989); § 39.052(3)(d) (decision to impose adjudication of delinquency is made at disposition hearing); supra note 3. Under the case law cited earlier in this opinion, the trial court's exercise of sentencing discretion "will not be disturbed if the sentence imposed does not exceed the bounds established by statute." Infante v. State, 197 So.2d at 544; § 39.052(3)(k), Fla. Stat. (1993). This court cannot review, or reverse, the trial court's decision to impose adjudication of delinquency.
[15] In his brief, J.M. argues that this court should reverse the trial court disposition and remand with directions to adopt the Department's recommendation. In so doing, J.M. urges that this court follow adult sentencing guidelines cases which require remand for imposition of a guidelines sentence where a trial court's reasons for a departure sentence have been found insufficient by the appellate court. See Pope v. State, 561 So.2d 554 (Fla.1990). The Florida Supreme Court's decision in Troutman v. State, 630 So.2d 528, 533 n. 6 (Fla.1993), is fatal to J.M.'s position. I entirely agree with the majority's decision to reject J.M.'s argument on this point.
[16] In P.D.W. and M.H., no reasons were given for committing the child to the Department. 621 So.2d at 739, 621 So.2d at 528.
[17] Indeed, even in adult sentencing guidelines cases, the bare fact that a probation officer recommends a particular sentence is not a valid reason to impose it. See Scurry v. State, 489 So.2d 25, 29 (Fla.1986); State v. Zlockower, 650 So.2d 692, 693 n. 2 (Fla. 3d DCA), dismissed, 659 So.2d 1091 (Fla.1995); Blanton v. State, 546 So.2d 1181, 1182-83 (Fla. 5th DCA), cause dismissed, 551 So.2d 460 (Fla.1989); Byrd v. State, 531 So.2d 1004, 1007 (Fla. 5th DCA 1988); Cahill v. State, 505 So.2d 1113, 1114 (Fla. 2d DCA 1987); State v. Eason, 501 So.2d 696 (Fla. 2d DCA 1987); State v. D'Alexander, 496 So.2d 1007, 1009 (Fla. 2d DCA 1986); Montgomery v. State, 489 So.2d 1225, 1226 (Fla. 5th DCA 1986); Tompkins v. State, 483 So.2d 115, 116 (Fla. 2d DCA 1986).

The sentencing decision is ultimately that of the court, not the probation officer, and cannot properly be delegated to the probation officer. See Montgomery v. State, 489 So.2d at 1226; Carnegie v. State, 473 So.2d 782, 783 (Fla. 2d DCA 1985). Indeed, different caseworkers might come to different conclusions in evaluating the same case. The final decision must be that of the sentencing judge.