793 So.2d 1195 (2001)
K.N.M., A Child, Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-3342.
District Court of Appeal of Florida, Fifth District.
September 21, 2001.
*1196 James B. Gibson, Public Defender, and Anne Moorman Reeves, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Mary G. Jolley, Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, C.J.
The court found K.N.M. guilty of aggravated battery with a deadly weapon and causing great bodily harm. K.N.M. contends the court erred in placing him in a level six commitment instead of following the recommendation of the Department of Juvenile Justice ("DJJ") that K.N.M. be placed on community control. We agree and reverse.
According to the trial testimony, K.N.M. was involved in a melee during which he *1197 approached the victim from behind and hit him with a stick. The victim required stitches and staples, and was told by medical personnel that he was lucky to be alive. At the time of this adjudication, K.N.M. was also adjudicated guilty of reckless driving. Although he was found guilty of reckless driving, K.N.M. was charged with aggravated assault with a deadly weapon, the weapon being K.N.M.'s car. He admitted being the driver of the car, but denied actually aiming it at the other car. K.N.M. had a prior adjudication of possession of a concealed weapona stick. His explanation, according to the court, was that he had the stick in his car in case anyone tried to steal his rims or speakers. The three offenses were committed in January 1999, December 1998, and September 1998, respectively.
The disposition hearing was held on October 25, 1999. At that time, K.N.M. had been on community control since July 16, 1999 for the concealed weapon adjudication, and had committed no further offenses. The DJJ recommended community control for the new offenses because he had been doing well under supervision. K.N.M. was characterized as a "model client" who was always available for supervision and who completed his sanctions in a timely manner. The DJJ thought he was not a safety risk because he had learned his lesson and had taken several positive steps to turn his life around. He was working full time and attending a community college. His employer stated that he was hard working and responsible. The DJJ thought that commitment would be counterproductive in that it would eliminate the positive strides he had made. K.N.M.'s counsel told the court that K.N.M. intended if possible to join the Coast Guard, which would accept him if he were placed on community control. Defense counsel argued that K.N.M. accepted responsibility, was extremely sorry, and stood ready to pay restitution. The prosecutor told the court that he had attended the predispositonal staffing and saw a lot of anger on K.N.M.'s part. The prosecutor told the court that K.N.M. was asked why he was there and he responded that he was there "for some reason," and that for all K.N.M.'s remorse, he denied being the perpetrator. The prosecutor pointed out that two of K.N.M.'s offenses involved violence, and that K.N.M. continued to deny responsibility, claiming that he had not been there.
The court stated that it was very familiar with the aggravated battery case and the reckless driving case, and the testimony that was presented in the two trials. The court was aware of the history of the case and that the concealed weapon charge involved a stick, as did the aggravated battery case. The court did not agree that K.N.M. was remorseful, noting that at the predispositional meeting K.N.M. denied culpability for the aggravated battery, even though a friend of his had testified at trial that he saw K.N.M. hit the victim, and that K.N.M.'s motive was revenge. Referring to the gaping wound to the victim's head, the court stated that K.N.M.'s in-court expression of regret to the victim did not make it "okay." The court also saw a pattern of conduct which was a danger to the public safety. Accordingly, the court did not accept the recommendation of the DJJ.
Section 985.23(3)(c) permits a trial court to order placement at a restrictiveness level which differs from the DJJ's recommendation, but the court may not do so merely because it disagrees with that recommendation. A.C.N. v. State, 727 So.2d 368 (Fla. 1st DCA 1999). The trial court's reasons for disregarding the DJJ's recommendation must be stated on the record, and must be supported by a preponderance of the evidence. Id. Further, the reasons must refer to the characteristics of the restrictiveness level vis-a-vis the *1198 needs of the child. A.G. v. State, 737 So.2d 1244 (Fla. 5th DCA 1999). Because the trial court disregarded the DJJ's recommendation for an impermissible reason, we need not decide whether, in light of K.N.M.'s apparently stellar performance while on community control, K.N.M.'s pattern of conduct justifies a finding that he is poses a danger to the public safety. Although remorse and an admission of guilt may be grounds for mitigation of a sentence or a disposition, the opposite is not true.
"The law is clear that any judicially imposed penalty which needlessly discourages assertion of the Fifth Amendment right not to plead guilty and deters the exercise of the Sixth Amendment right to demand a jury trial is patently unconstitutional. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968)." City of Daytona Beach v. Del Percio, 476 So.2d 197, 205 (Fla.1985) (quoting Gillman v. State, 373 So.2d 935, 938 (Fla. 2d DCA 1979), quashed on other grounds, 390 So.2d 62 (Fla.1980)); Hubler v. State, 458 So.2d 350, 353 (Fla. 1st DCA 1984); Fraley v. State, 426 So.2d 983, 985 (Fla. 3d DCA 1983), appeal after remand sub nom. Frazier v. State, 467 So.2d 447 (Fla. 3d DCA), rev. dismissed, 475 So.2d 694 (Fla.1985); McEachern v. State, 388 So.2d 244, 248 (Fla. 5th DCA 1980). As explained by the Florida Supreme Court in Holton v. State, 573 So.2d 284, 292 (Fla.1990), cert. denied, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991):
A defendant has the right to maintain his or her innocence and have a trial by jury. Art. I, § 22, Fla. Const. The protection provided by the fifth amendment to the United States Constitution guarantees an accused the right against self-incrimination. The fact that a defendant has pled not guilty cannot be used against him or her during any stage of the proceedings because due process guarantees an individual the right to maintain innocence even when faced with evidence of overwhelming guilt. A trial court violates due process by using a protestation of innocence against a defendant. This applies to the penalty phase as well as to the guilt phase under article I, section 9 of the Florida Constitution.
A.S. v. State, 667 So.2d 994, 995-996 (Fla. 3d DCA 1996).
A corollary is that it is improper for the trial court to aggravate a sentence because the defendant failed to exhibit remorse for having committed the offense. Peake v. State, 490 So.2d 1325 (Fla. 1st DCA 1986). This constitutional right is also enjoyed by juveniles in their criminal adjudicatory proceedings before the court. A.S. at 996 (citing R.A.B. v. State, 399 So.2d 16 (Fla. 3d DCA 1981)).
Although the lack of remorse and unwillingness to admit guilt were not the only factors in the trial court's decision to disregard the DJJ's recommendation, these factors should not have been considered at all. See id. (citing Del Percio; Gillman; Hubler). Since it is clear they were taken into consideration, we must reverse the disposition order. "In an abundance of caution," we remand for redisposition before a different judge. Id. (quoting Hubler; Gallucci v. State, 371 So.2d 148, 150 (Fla. 4th DCA 1979)); see also Lyons v. State, 730 So.2d 833 (Fla. 4th DCA 1999); Johnson v. State, 679 So.2d 831 (Fla. 1st DCA 1996).
REVERSED AND REMANDED.
SAWAYA and PLEUS, JJ., concur.